336 A.2d 836.
HERBERT S. WHITMAN *vs.* S. DOUGLAS MOTT *et al.*
JOHN F. GRAY *vs.* S. DOUGLAS MOTT *et al.*

APRIL 29, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. We have consolidated these two petitions in equity in the nature of quo warranto. They were filed in this court in accordance with the provisions of G. L. 1956 (1969 Reenactment) §10-14-1, and are brought by petitioners who alleged that they are lawful incumbent members of the New Shoreham Town Council. Five of the respondents are holders of duly issued certificates which verify that they were elected members of the town council at the general elections held on November 5, 1974, and they presently hold those offices. Three of these respondents,

Lester L. Littlefield, Louis R. Ritzinger, and Charlotte L. Wiggins, have filed a brief and were heard at oral argument. The other two, S. Douglas Mott and Matthew Swienton, filed no briefs nor did they appear at oral argument.[1]

To place this litigation in proper perspective, it is first necessary that we locate New Shoreham geographically, give a brief description of its beginning as one of Rhode Island's municipalities, and make some brief passing references to the Rhode Island Constitution, a prior decision of this court, and a 1912 statute.

The Town of New Shoreham is an island that is located in the Atlantic Ocean some 10 miles south of the Rhode Island mainland. It is better known by its previous name, Block Island. On November 6, 1672, the Colonial General Assembly granted the petition of James Sands, Thomas Terry and others and gave Block Island the status of a town. In granting the island a charter, the Assembly accepted the petitioners' suggestion that, as a sign of unity with "our native country," the island's name be changed to New Shoreham.

A copy of New Shoreham's charter can be found in 2 Rhode Island Colonial Records 466 et seq. The charter called for the election of a head warden and a deputy warden. The wardens who were to be chosen from the "free men able and well qualifyed for the preservation of his Majesties peace" were assigned a multitude of duties. The charter specifically provided for the election of "* * * three wise, honest men, who shall bee added to the Wardens for the Towne Councill, to have like authority as other Towne Councills have."

---

[1]The final two respondents, John C. Dodge and James E. Ernst, were the second warden and a councilman, respectively, prior to the 1974 elections but they did not seek reelection. Neither chose to file briefs nor appear before us.

The charter acknowledged the difficulty of the "Generall Court of Tryalls" holding its sessions on the island because of "the distance by sea" as well as "danger and hinderances" and expressly empowered the wardens to conduct jury trials in certain civil actions where the amount sought did not exceed five pounds sterling of "New England" money. The wardens were also designated as justices of the peace with power to examine anyone suspected of crime and to imprison them pending action by the "Generall Court of Tryalls." All marriages were to be solemnized before either warden and they were to notify the town clerk of the marriages that took place before them. Through the more than 300 years that have elapsed since the petition of Sands, Terry and others received legislative approbation, New Shoreham's first and second wardens have continued to exercise a wide variety of judicial and legislative functions in the discharge of the responsibilities of their respective offices.[2]

Article X, §7 of the Rhode Island Constitution gave the Town of New Shoreham the right to "continue to elect their wardens as heretofore." Sometime prior to the turn of the Twentieth Century, this court in discussing the provisions of the 1672 charter and of art. X, §7, recognized that New Shoreham's first and second wardens have always acted as and have been regarded as members of the town council. *State* v. *Champlin*, 16 R. I. 453, 17 A. 52 (1889).

At its January 1912 session, the General Assembly enacted P. L. 1912, ch. 887 which in pertinent part provides that beginning with the general election of November 1912 and "biennially thereafter," the New Shoreham electors

---

[2]The Warden's Court of New Shoreham still has jurisdiction to try all crimes committed on the island or the "waters adjacent thereto" which call for a punishment of a fine of not more than $20 or a prison sentence of up to 3 months. General Laws 1956 (1969 Reenactment) §12-3-3.

Section 15-3-5 specifically permits the New Shoreham wardens to "join persons in marriage in said town."

shall elect a first warden, a second warden, and three councilmen, "which councilmen and the wardens shall compose the town council."

On May 1, 1974, the first warden (one of petitioners in this cause) wrote to the town's representative in the Rhode Island Senate and advised the senator that a majority of the council desired the introduction of enabling legislation whereby the town could "number the three councilmen on the local ballot instead of their running at large." The warden's letter also sought legislative authorization for the numbering of the candidates for school committee. The request came at a time when the January 1974 session of the General Assembly was in its final days.

The Senate and House Journals for the January 1974 session indicate an almost instant response to the first warden's request. The island's senator acted with alacrity. On May 2, 1974, he introduced a bill which is now known as P. L. 1974, ch. 297 but which was numbered by the Senate Clerk as "74-S 2655." The title of the bill reads, "An Act Providing for the Biennial Election of Members of the Town Council and the Members of the School Committee of the Town of New Shoreham by Numbered Places." After the bill was introduced, it was referred to the Senate's Committee on Corporations. The next day, May 3, 1974, "74-S 2655" cleared the General Assembly and was transmitted to the Governor. When the bill was on for a vote on the floor of each branch of the Legislature, the passage was moved by the island's senator and representative respectively. The bill became law on May 14, 1974 without the Governor's signature.

Things on New Shoreham remained tranquil until October 1974. At that time litigation was begun in the Superior Court by a Samuel D. Mott. In his complaint, Mr. Mott

asked that the numbering provisions[3] of the 1974 legislation be declared unconstitutional and that the voters "be instructed that they may choose *any three* of the candidates for Town Council." (Emphasis added.) The trial justice declared that the pairing provisions, as it applied to the six candidates, were unconstitutional.[4] He also ruled that the candidates for the wardens' posts could be paired but that neither winner could sit as a member of the town council described in P. L. 1974, ch. 297 as consisting of five members. Accordingly, when the voter appeared at the New Shoreham polls on election day, he was informed that his choices for council were to be made from among the six candidates who had originally sought the three strictly legislative seats on the council. The Superior Court judgment guaranteed five of those six candidates seeking a purely legislative office that they would be winners once the votes were counted.

The single issue to be determined in this proceeding is whether the trial justice was correct in ruling that the 1974 statute had implicitly repealed the 1912 act which called for a council composed of the two wardens and three members called councilmen. We believe that he erred.

---

[3]The numbering of the council positions is a device whereby candidates for a specific numbered position are "paired" against each other. An individual in filing his declaration of candidacy, even though he is actually running on a townwide basis, must designate the number of the position he seeks—such as the first, second, or third councilman. The names of the candidates for each numbered position appear horizontally on the ballot. The voter can choose only one of the several names that appear on the horizontal line. The voting machines are so arranged that once the lever beside one candidate's name is depressed, the levers alongside the other candidates' names are locked and cannot be depressed.

[4]In declaring the pairing provisions unconstitutional the trial justice was adhering to rulings he had made earlier in cases involving the pairing of candidates in the Towns of Cumberland and Bristol. We recently upheld these decisions in *Corona* v. *Burns,* 114 R. I. 484, 335 A.2d 338 (1975), and *Chase* v. *Burns,* 114 R. I. 485, 335 A.2d 334 (1975).

Implied repeals of statutes are not favored in the law and they will not be presumed in the law when the old and the new statutes can well stand together. *State* v. *Bradshaw,* 101 R. I. 233, 221 A.2d 815 (1966); *Lederer Realty Corp.* v. *Hopkins,* 71 A. 456 (1908). It is assumed that an existing statute is representative of the popular will and as such the presumption is against its alteration particularly if the existing enactment is a public statute of long standing. 1A Sutherland, *Statutory Construction* §23.10 at 231 (4th ed. 1972). In considering the statutes relating to the election and duties of New Shoreham's wardens, we are dealing with ancient law that had its genesis long before the firing "of the shot heard 'round the world."

The title of the 1974 act helps tell the story. It told the members of the assembly that the candidates for New Shoreham's Town Council would be paired. The body of the bill tells us that the council since 1912 has been composed of five members. The 1974 act did not effect any change in the numerical makeup of the council. The bill contains no reference to the 1912 legislation nor does it contain any clause which repeals "all acts and parts of acts inconsistent herewith."

The 1974 legislation presently under review can hardly be classified as a model of clarity or preciseness. The first sentence of its first section provides that the initial election for the paired candidates is scheduled for the "first Tuesday next after the first Monday in the year 1974." This would be quite an accomplishment when one considers that the scheduled election date had long since gone by when the bill was introduced some 5 months later in May of 1974. Additionally, ch. 297 states that three members of the school committee shall be initially elected at the 1974 election and "alternately thereafter" two members will be elected. Previously, the term of school committee for New Shoreham was 4 years and the committee consisted of five

individuals. The terms were staggered so that there would be a contest for three positions at one biennial election, and the following election would see a contest for the other two positions. The 1974 amendment creates a problem for the town because it states that the winning candidates shall serve for a period of 2 years. Consequently, in 1976 the terms of the three who won in 1974 will expire, and the "alternately thereafter" proviso becomes a nullity because, of necessity, there have to be five contests for school committee at the 1976 election as well as every biennial election thereafter unless, of course, the Legislature takes remedial action. Even apart from the elimination of the staggered terms by the reduction of the 4-year term to 2, there is a question of whether the "alternately thereafter" language means that following the 1976 election there will be only two school committee races at all subsequent elections. The statute is silent as to which two positions will be vacated. It is conceivable that a member once elected could stake a claim to a life membership on the committee. These observations serve to highlight the fact that the town's belated request for the enabling legislation had prompted a hastily drawn reply which hardly qualifies as the epitome of legislative draftsmanship.

Having in mind our obligation to reconcile any conflicts between the two statutes, we see no irreconcilable conflict between the two which justifies any finding of an implied repeal of the 1912 statute by the 1974 act.

What the Legislature did in May 1974 so far as the New Shoreham Town Council is concerned was to give a somewhat overgenerous response to the council's request for pairing. Instead of pairing the candidates who were seeking the three positions whose sole prerogative was to enact legislation, the General Assembly paired the candidates for all five of the seats including the two seats of those who use

the same seat to perform both a legislative and a judicial role.

The presumption that the Legislature is aware of what statutes it has previously enacted diminishes somewhat when one looks at the time-honored duties of the first and second wardens and circumstances surrounding the introduction of bill "74-S 2655." A group of overworked and grossly underpaid part-time legislators looking toward final adjournment are presented with a last-minute request by one of the towns.[5] A veritable mountain of proposed legislation has made its way into the hopper. We find it hard to believe that when bill "74-S 2655" was being explained to the respective branches of the assembly the legislators

---

[5]The salary paid a legislator is set by the Rhode Island Constitution. Const. Amend. 11, §1. The lawmaker receives the munificent sum of $5 per day. The pay provision is applicable only to the first 60 legislative days and no more. The Legislature meets annually beginning on the first Tuesday following the first Monday of each year. Ordinarily, the legislative week begins on Tuesday and runs to the following Friday. The Senate and House Journals for the January 1974 session show that the New Shoreham bill was introduced on the 67th legislative day. It was approved by the General Assembly on the 68th legislative day. The Journals indicate that the Legislature adjourned that day. The Legislature returned on May 29 for a one-day session. The only bill that was enacted at that time related to the financing of political campaigns. The report issued by the Legislative Council shows that 680 "Introductions" of various legislative enactments were made in the Senate and that 795 bills were carried over from the 1973 session. The House experienced 1,030 introductions and had a carry-over from 1973 of 1,048. Actual enactments consisted of 298 public laws, 102 local and private acts and 366 resolutions. The report also indicates that a legislator who had the time, energy, and opportunity could read 941 bills which were printed and distributed to the assembly's members. *Summary of the Proceedings of the Rhode Island General Assembly at the regular January Session, 1974* at 36. During the legislative session, the legislators are expected to attend any number of meetings of committees or commissions to which they may be assigned as well as to be available to service the needs of their constituents. It should be pointed out that there is no requirement in the rules of either the Senate or the House of Representatives that all proposed legislation emanate from the Legislative Council.

considering this proposal thought it anything more than a routine piece of legislation permitting one of the towns to pair the candidates running for local office. During its January 1973 and 1974 sessions, the General Assembly passed acts which permitted the pairing of council candidates in the Towns of Bristol, Cumberland, Scituate, and New Shoreham. A cursory examination of the acts shows that they are practically carbon copies of each other.[6] The obvious inference to be drawn from comparing the relevant, almost identical language of these four acts is that the Legislature in voting for them was permitting pairing of the council candidates in each one of the four municipalities including New Shoreham whose wardens have been part and parcel of the town council since the days of King Charles II.

Consequently, we find no need to abrogate the 1912 statute. It can exist alongside the 1974 legislation. Both statutes call for five members. Two of the five are the winning wardens. The trial justice upheld their pairing and the remaining question to be resolved is who will comprise the balance of the council.

The three respondents whose counsel has filed a brief and appeared at oral argument each received more votes on election day than the other three council candidates. They contend that since the people have expressed their choice as to who will be the top three, we should now declare them to be qualified to fill the remaining three seats of the council. Such a position, however, fails to take into consideration the information supplied to the voters on election day. They were told that they could vote for any five of the six candidates. If a voter had been told that his choice was to be limited to three of those six, it is open to question which three would have been chosen. Consequently, we shall rule

---

[6]See appendix.

that in the light of the confusing circumstances prevailing on New Shoreham in November 1974, it would be unfair, unjust, and invalid to rule that any of the respondents who were candidates on November 5, 1974 were duly elected at that time to the town council.

Accordingly, the petitioner in each cause may present a decree granting his petition and establishing the validity of his title as a member of the Town Council of the Town of New Shoreham. The decree will also contain a provision ordering a new election at which the names of the six respondents who were candidates in the November 5, 1974 election will appear on the ballot and the voters will make their choice as to the three candidates they wish to join the petitioners as members of the Town Council of New Shoreham. The parties shall confer with the Secretary of State, the State Board of Elections, and the town's Board of Canvassers so that the election can be held as expeditiously as circumstances will permit. For the purposes of the new election, we shall rule that anyone eligible to vote on the day specified for the special election may cast a ballot for those candidates whom he or she thinks is best qualified to serve.

Appendix

Chapter 277[7]

An Act Providing for the Biennial Election of Members of the Town Council of the Town of Cumberland by Numbered Places.

It is enacted by the General Assembly as follows:

"Section 1. The electors of the town of Cumberland, on the first Tuesday next after the first Monday in November in the year 1974, and biennially thereafter, shall by ballot elect a town council consisting of five (5) members.

The names of each candidate for the town council shall

_____

[7]Identical pairing legislation for the Town of Bristol can be found at P. L. 1973, ch. 71. Scituate's pairing legislation is cited as P. L. 1974, ch. 60.

be numbered up to five (5) upon the ballot labels, and in counting the vote for each councilman, the places numbered (1 through 5) shall be considered as separate places. The candidates receiving the highest number of votes in each of the five separate places for said town council shall hold their respective offices for the term of two years."

Sec. 2. This act shall take effect upon its passage.

## Chapter 297

An Act Providing for the Biennial Election of Members of the Town Council and the Members of the School Committee of the Town of New Shoreham by Numbered Places.

It is enacted by the General Assembly as follows:

Section 1. The electors of the town of New Shoreham on the first Tuesday next after the first Monday in the year 1974, and biennially thereafter shall by ballot elect a town council of five (5) members and three (3) members of the school committee and alternately thereafter two (2) members of the school committee.

The names of each candidate for the town council shall be numbered up to five (5) upon the ballot labels and in counting the vote for each councilman, the places numbered (1 through 5) shall be considered as separate places. The candidates receiving the highest number of votes in each of the five separate places for said town council shall hold their respective offices for the term of two years.

The names of each candidate for the school committee to be elected at any such election shall be similarly numbered and considered as separate places. The candidates receiving the highest number of votes in each of the separate places for school committee shall hold their respective offices for the term of two (2) years.

Sec. 2. This act shall take effect upon its passage.

*Sheffield & Harvey, Ray H. Durfee,* for petitioners.

*Corcoran, Peckham & Hayes, William W. Corcoran, Kathleen Managhan,* for respondents.