NORTHEASTERN CORPORATION

v.

ZONING BOARD OF REVIEW of
THE TOWN OF NEW
SHOREHAM.

No. 85–446–M.P.

Supreme Court of Rhode Island.

Dec. 8, 1987.

Phillip W. Noel, John P. McGann, Daniel A. Calenda, Coffey, McGovern, Noel & Neal, Ltd., Providence, for plaintiff.

Nancy Hodge, Town Solicitor for New Shoreham, Westerly, Elliott Taubman, Block Island, for defendant.

## OPINION

KELLEHER, Justice.

We have issued our common-law writ of certiorari to review a Superior Court justice's affirmance of the New Shoreham Zoning Board's rejection of the petitioner's efforts to build a number of boatel units [1] in that municipality. New Shoreham, which is also known as Block Island, is located in the Atlantic Ocean and situated some ten miles south of the Rhode Island mainland.[2] Hereafter we shall refer to the petitioner as Northeastern and to the zoning board of review as the board.

The record indicates that in August 1982 Northeastern acquired a parcel of island real estate that is located on Ocean Avenue in an area zoned for "business." The parcel borders a navigable saltwater pond called Trim's Pond and abuts a municipal right of way. In mid-December 1982, Northeastern filed its zoning application with the board. The document indicated that the residences then present on the parcel would be demolished. An existing restaurant would be renovated, and on top of the renovated premises would be erected four additional living units. The petition

also indicated that twenty-four new boatel units would be built on the parcel.

The restaurant renovation and the additional living units were approved by the board in February 1983. Action on the boatel proposal was deferred. In April 1983 Northeastern modified its original proposal by reducing the number of requested boatels from twenty-four to twenty and also sought approval of construction of a marina. Later the following May the board denied the boatel request but approved the marina proposal.

Northeastern then invoked the provisions of G.L. 1956 (1980 Reenactment) § 45–24–20 and appealed the denial to the Superior Court. There a justice of that court rendered an opinion in which he affirmed the board's action. Northeastern is critical of the Superior Court justice's actions because of his alleged failure (1) to consider its application as one seeking a "variance" from the square-footage requirement, (2) to grant relief under a so-called compatible-industry exception, (3) to include within the square-footage computations all of the real estate it owns, (4) to invoke the doctrine of estoppel, and (5) to deal with the undue influence the town council exerted on the board.

Northeastern's contention concerning the variance affords us the opportunity to point out, as we have in the past, the differences among the remedies that are available to property owners who wish to improve their real estate.

In any zoning controversy four terms may arise. They are "permitted uses," "conditionally permitted uses," "variances," and "deviations." We shall point out the purpose each of these devices serves as we consider the controversy now before us.

Section 6 A of article III of New Shoreham's Zoning Ordinance lists over a dozen permitted uses that may take place within a business district without the necessity of gaining approval of the board. The uses

---

1. A boatel can best be described as a shore facility having docking accommodations. Whenever a boat is secured to such a dock, its occupants can go ashore to the boatel where they can enjoy such amenities as hot and cold water, a full-size bed and clean bed linens.

2. *See Whitman v. Mott,* 114 R.I. 530, 531, 336 A.2d 836, 837 (1975).

range from antique shops to restaurants and in between can be found such uses as banks, bowling alleys and department stores. Section 6 B lists uses that can be undertaken by the grant of a special exception. They run the gamut from gasoline stations to dumps and incinerators.

Northeastern's request to operate a boatel was based upon the provisions of sec. 6 B 4 of article III. An especially pertinent portion of sec. 6 B 4 provides that an enterprise such as a hotel, motel or boatel can be situated in a business district provided that the lot upon which such enterprise is to be located contains a minimum of 40,000 square feet of land. A summary of the record indicates that a survey taken, at the town's insistence, revealed that Northeastern's parcel contained 32,000 square feet of land. There was a dispute as to the parcel's precise square footage. However, it is clear that the parcel does not contain the requisite area.

 It is obvious that the board was powerless to sanction the boatel project once it concluded that the square-footage requirement of 40,000 square feet could not be satisfied because the operation of a boatel is a "conditionally permitted use," and if the condition, the square-foot requirement, was not satisfied, the board could not grant the use. Undaunted by this fact, Northeastern is critical of the Superior Court justice for his refusal to consider Northeastern's application, which was for a special exception, as one seeking a variance from the squarefootage requirements. This contention overlooks the fact that the Superior Court justice, in reviewing the zoning board's actions, is enjoined by § 45–24–20 from substituting his judgment for that of the zoning board. At no time did Northeastern ever attempt to invoke those portions of the statute that permit a Superior Court justice to remand a case to the zoning board for the taking of additional evidence. Again, the record clearly indicates that when Northeastern was before

the board, it never sought relief by way of a variance. The only variance sought by Northeastern was relief from the parking space requirements of the ordinance.

 Again, a variance is a constitutional safety valve to prevent confiscation of one's property. If Northeastern were seeking a true variance, it would be required to show that the board's action had deprived it of all beneficial use of its property. *Gaglione v. DiMuro*, 478 A.2d 573 (R.I. 1984). No such evidence was presented. It may be that Northeastern, when using the term "variance," had in mind "deviation." The so-called deviation affords relief from provisions that govern area and setback restrictions and comes into play only when the project involves a permitted use.[3] It is not available in a situation in which the use is granted by way of a special exception. *Zammarelli v. Beattie*, 459 A.2d 951, 954 (R.I. 1983).

 Article III, sec. 6 B 2, provides for the grant of a special exception for a "compatible industry." This provision authorizes the location in a business district of an industry that, in the opinion of the zoning board, will be compatible with its surroundings, will be noninjurious or offensive to the neighborhood, and will promote the town's general welfare. We are of the belief that New Shoreham legislators are individuals endowed with common sense. Consequently, we believe that the council, in enacting this exception, never intended that it could be used to circumvent sec. 6 B 4's square-footage requirements that, incidentally, are mandated for any proposed hotel, motel, or boatel that is to be constructed in a business district. To nullify the express language of sec. 6 B 4 would obliterate the obvious intent of the ordinance. Although Northeastern's resourcefulness is to be admired, it is not persuasive.

---

3. In *Sun Oil Co. v. Zoning Board of Review of Warwick*, 105 R.I. 231, 233, 251 A.2d 167, 169 (1969), this court noted that relief from regulations dealing with area restrictions such as side and rear yard lines, height limitations and lot coverage may be granted in this state in an appropriate case as a *Viti* deviation, as a special exception where the zoning ordinance so provides, or as a variance under G.L. 1956 (1980 Reenactment) § 45–24–19(c).

In its "all property" offense, Northeastern argues that it was entitled to include in its computations the land beneath Trim's Pond. Of course, Northeastern's underwater approach overlooks the wellestablished principle that in this jurisdiction the line of demarcation that separates the property interests of the waterfront owners from the remaining populace of this state is the mean high-tide line. *State v. Ibbison*, 448 A.2d 728, 732 (R.I. 1982). Fortunately, the merit of this contention is completely overshadowed when one looks at the zoning ordinance, which defines a lot as a "parcel of land used or intended to be used as the site for a main structure or use in accessory stuctures or uses."

The remaining contentions of the property owners, to wit, estoppel and the town council's undue influence, deserve a passing mention. The estoppel argument is based upon the council's approval of the renovations of the restaurant and the construction of the four dwelling units, followed by the subsequent rejection of the boatel proposal. Northeastern argues that such a rejection came after "a needless expenditure of hundreds of thousands of dollars." However, in the record no evidence exists to support such a claim. Nevertheless, there is no question that Northeastern had not or has not acquired the necessary square footage. The record does indicate that at the public-hearing objection to the boatel adoption was specifically lodged because Northeastern's lot did not satisfy the 40,000–square-foot requirement. The board, in light of this record, was bound to comply and give effect to the restrictive provisions of sec. 6 B 4.

The undue-influence issue arises because the town council sent a letter to the board regarding the boatel proposal. If the town legislators were attempting to influence the board through this communication, its effort was a complete waste of time. Northeastern's shortage in the area category doomed the boatel proposal from the moment the board began its consideration of this enterprise. Once the town solicitor advised the board that it could not grant the boatel request because of the area shortage, any boatel sentiment, pro or con, became meaningless.

The petition for certiorari is denied and dismissed. The writ previously issued is quashed and the record of this case which has been certified to this court is ordered returned to the Superior Court.