DECISION
Before this Court is the appeal of the plaintiffs, Amato A. DeLuca ("DeLuca") and Rose Farina ("Farina") from a decision of the Narragansett Zoning Board of Review denying their application for dimensional relief. This Court possesses jurisdiction pursuant to G.L. § 45-24-69(A).
 Facts/Travel
Farina owns a vacant 11,006 square-foot substandard lot of record[1] described as 55 Conanicut Road, Assessor's plat N-H, Lot # 243, overlooking Wesquage Beach (commonly known as Bonnet Shores) in an R-40[2] zoning-use district in the Town of Narragansett ("Town"). At some point it appears that Farina agreed to sell her land to her brother DeLuca, who planned to build a two-and-one-half story (approximately 52 feet high) single-family home on the land. The town building official, however, denied DeLuca's application for a building permit because "[s]ection 5.2 of the [town's] zoning ordinance . . . requires a variance to construct a dwelling higher than 30' above natural grade." The building official also noted that DeLuca would need to certify that his plans met "the design standards for construction in a steep slope overlay district."
Consequently, DeLuca (as applicant) and Farina (as owner) submitted an application to the board seeking both a special exception (now permitted pursuant to a special-use permit) to allow him to build an individual sewage disposal system (ISDS) in a steep-slope overlay district, and a dimensional variance to allow him to exceed the town's height restriction by some 22 feet.
The board held hearings on DeLuca's application on April 7th, May 12th, and November 10th of 1994, over the course of which both experts and neighbors voiced their opinions. On June 30, 1994, however, in the midst of the hearings, the town amended its zoning ordinance. DeLuca agreed to be bound by these amendments, which affected his application in at least two ways: (1) a special-use permit was no longer required to build an ISDS in a steep-slope overlay district if certain developmental standards were met (which DeLuca's proposal apparently did); and (2) the town changed the method by which it measured proposed dwellings height-wise thereby reducing the dimensional relief needed by DeLuca from around 22 feet to approximately 16 feet. Decision of the Zoning and Platting Board of Review ¶ 2. Since the amendments rendered DeLuca's application for a special-use permit unnecessary, only his request for dimensional relief on a vacant substandard lot of record remained.[3]
After the final hearing, the board took the matter under advisement. By written decision recorded May 12, 1995,[4] the board denied what it "considered [to be a request for] a dimensional variance," by a vote of three to two, essentially, because the relief requested was not the least necessary for the reasonable enjoyment of the land. Decision of the Zoning and Platting Board of Review ¶ 10.
Thereafter, the aggrieved Farina, pursuant to G.L. 1956 §§45-24-31(4)(a) and 45-24-69(A), and DeLuca, pursuant G.L. 1956 § 45-24-31(4)(b), 45-24-41(B), 45-24-69(A), initiated an appeal by filing a complaint with the Superior Court on May 26, 1995.[5] Another justice of this Court allowed a number of neighbors ("neighbors") to intervene and they have submitted a brief in opposition to DeLuca's appeal.[6]
On appeal, DeLuca alleges that in addition to the previously referred to amendments, the town's zoning ordinance amendments also changed the standard of review for dimensional relief on vacant residential substandard lots of record from that applied to dimensional variances to that applied to special-use permits. Accordingly, DeLuca argues, the denial of his application was based on an error of law. Specifically, DeLuca argues that the Board applied the wrong standard in consideration of his application.
The neighbors respond by arguing that not only was the correct standard applied but that there were substantial facts upon which the board based its denial. They additionally argue that, in any event, DeLuca failed to satisfy the special-use permit standard.
 Jurisdiction
Before addressing the relative merits of this appeal, the Court first notes that in assuming subject-matter jurisdiction over this appeal pursuant to G.L. 1956 § 45-24-69(A) the Court has construed DeLuca's complaint, so as to do "substantial justice," and to "secure the just, speedy, and inexpensive determination" of this action.[7] Super. R. Civ. P. 8(f), Super. R. Civ. P. 1.
While the now-repealed G.L. 1956 § 45-24-20 provided that appeals to the Superior Court from decisions of zoning boards must be filed "within twenty (20) days after a decision has been filed in the office of the zoning board," the applicable statute now provides that appeals to the Superior Court from decisions of zoning boards must be filed "within twenty (20) days after the decision has been recorded and posted in the office of the . . . town clerk," G.L. 1956 § 45-24-69(A) (emphasis added).
It has already been held that "`the [timely] filing of a notice of appeal with the clerk of the Superior Court for the appropriate county is an essential condition precedent to the invoking of the jurisdiction of the Superior Court,"' Carbone v.Planning Board of Appeal, 702 A.2d 386, 388 (R.I. 1997) (citingMauricio v. Zoning Board of Review, 590 A.2d 879, 880 (R.I. 1991)), and that "[i]f the condition is not met, the appeal is invalid and the Superior Court has no choice save to dismiss,"Mauricio, 590 A.2d at 880.
Giving the word "and" its plain and ordinary meaning, the Court concludes that posting is also an essential condition precedent to an appeal. See id; ("when the language of a statute is unambiguous and expresses a clear and sensible meaning, . . . [t]he statute must be applied literally by giving the words their plain and ordinary meaning").
In his complaint, DeLuca merely alleges that the decision of the board was "duly filed in the office of the Town Clerk," without alluding to its posting or recordation. Complaint ¶ 6. However, pursuant to Super R. Civ. P. 9(c), recordation and posting can be "aver[red] generally." Since the earlier statute measured the appeal period from the filing of the decision rather than its recordation, and since no issue has been raised regarding the posting of the decision, the Court construes DeLuca's averment liberally and assumes subject-matter jurisdiction over this action. The Court now turns to the merits of this appeal.
 Standard of Review
In its review of the record of a hearing before the board, the Court cannot substitute its judgment for the board's as to the weight of the evidence on questions of fact. G.L. § 45-24-69
(D). The Court may, however, "reverse . . . the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of . . . statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure; [or]
 (4) Affected by other error of law."
 Id.
 Analysis
Pursuant to statutory mandate, G.L. 1956 § 45-24-38 which states that "[a]ny . . . town adopting or amending a zoning ordinance under this chapter shall regulate the use or uses of any single substandard lot of record," the Narragansett Zoning Ordinance provides that:
"A vacant substandard lot of record in an . . . R-40 . . . zone may be used for a single-family dwelling without the grant of a special use permit from the zoning board of review provided that:
(a) The front yard, rear yard and side yard dimensions and the building coverage percentages comply with the modified dimensional standards for legal substandard lots of record set forth in Section 6.5 of this ordinance;
(b) . . .
(c) The proposed use complies with all other applicable provisions of this ordinance." Narragansett Zoning Ordinance § 8.1.2, at 53.
The modified dimensional standards alluded to in subdivision (a) were satisfied by DeLuca's proposed use and subdivision (b) was either satisfied or inapplicable. However, as the town's building official determined, DeLuca's proposal failed to "compl[y] with all other applicable provisions" of the ordinance because its height exceeded the maximum 30 foot height allowed in an R-40 zoning use district. See Narragansett Zoning Ordinance § 6.4, at 34.
DeLuca was thus left to pursue the only avenue that appeared to be open to him, applying for a special-use permit pursuant to Narragansett Zoning Ordinance § 8.1.2, at 54. Section 8.1.2 states that "[a] residential substandard lot of record in an . . . R-40 . . . zone which does not comply with the above requirements may be used for a single-family dwelling if the zoning board of review grants a special use permit"); see also
Narragansett Zoning Ordinance § 12.4.3, at 62-63 ("[t]he zoning board may grant a special use permit . . . for . . . the use of a substandard lot of record").
As noted above however, and notwithstanding its apparent availability, in conjunction with such a request the board was powerless to grant the dimensional relief that was the "real issue" before it.
The terms of the dimensional-variance statute "unequivocally command that a dimensional variance be granted only in connection with the enjoyment of a legally permitted beneficial use, not in conjunction with a use granted by special permit." Newton v.Zoning Board of Review, No. 97-84-M.P., Slip. Op. at 6 (R.I., filed June 12, 1998). "The so-called deviation [now known as a dimensional variance] affords relief from provisions that govern area and setback restrictions and comes into play only when the project involves a permitted use. It is not available in a situation in which the use is granted by way of special exception [now known as a special use]." Northeastern Corp. v. Zoning Boardof Review, 534 A.2d 603, 605 (R.I. 1987).
This holding is consistent with the definitions provided by G.L. 1956 § 45-24-31(52) which states that a permitted use is "[a] use by right which is specifically authorized in a particular zoning district," and § 45-24-31(57) which defines a special use as "[a] regulated use which is permitted pursuant to the special-use permit." [Emphasis added]. Furthermore § 45-24-31
(61)(b) provides that a dimensional variance constitutes "[p]ermission to depart from the dimensional requirements. . . [when] there is no other reasonable alternative way to enjoy a legally permitted beneficial use." Such definitions apply with equal force to the Narragansett Town Ordinances which govern here.[8]
Finally, even if DeLuca is correct in arguing that the board should have granted his special-use permit as such, even without any reference to the dimensional-variance standard, he is mistaken in his understanding of what the consequence of such an award would have been.
Contrary to DeLuca's belief, the award of a special-use permit would have merely allowed him to use the land for a particular purpose or activity subject to the existing building envelope. G.L. 1956 § 45-24-31(60); § 45-24-31(11). He would not have been, and could not have been granted the unfettered right to build the dimensionally nonconforming home he proposed.
The board's error in this case resulted from its losing sight of what was before it — an application for a special-use permit occasioned by a desire for dimensional relief — and its consequent failure to recognize "the differences among the remedies that are available to property owners who wish to improve their real estate." Northeastern Corp. v. Zoning Board ofReview, 534 A.2d 603, 604 (R.I. 1987).
In light of the above reasoning and in consideration of the applicable standard, this Court finds that DeLuca's substantial rights were not prejudiced by the board's failure to grant his special-use permit because such an award, even properly considered, would have permitted him to do nothing more with the land than that which he was already permitted to do, namely to build a dimensionally-conforming single-family residence. Narragansett Zoning Ordinance § 8.1.2, at 53.
For the foregoing reasons, the Court affirms the board's decision denying DeLuca's application for dimensional relief Counsel shall prepare an appropriate order for entry in accordance with this decision.
[1] See G.L. 1956 § 45-24-31(59) (defining substandard lot of record as "[a]ny lot lawfully existing at the time of adoption or amendment of a zoning ordinance and not in conformance with the dimensional and/or area provisions of that ordinance"); see also
Narragansett Zoning Ordinance § 8.1.1, at 53.
[2] The R-40 zoning-use district in Narragansett requires a minimum 40,000 square-foot lot. Narragansett Zoning Ordinance § 6.4, at 34.
[3] The following excerpt from the hearing held after the town's amendments took effect reveals the consensus of what was remaining before the board:
 "THE CHAIRMAN: So before we begin I think that's an issue that we have to deal with, and we have to redefine the actual variance which is, I believe, height, and I think that's the only issue that we're concerned with at this point, dimensionally.
 MR. DONNELLY [town solicitor]: I think that was the only — is that the only thing we're here for?
 MR. REVENS [DeLuca's counsel]: Strictly speaking, Mr. Chairman, I believe we need permission — under the new Ordinance we don't need permission in a steep slope anymore if we meet all the requirements, but under the old Ordinance we needed permission to build anything in a steep slope.
 So we were here for that also, although the real issue, I believe, has been from the height." November 10, 1994 Hearing at 4-5.
[4] The board also rendered an oral decision on January 19, 1995. Since the parties do not raise the issue, the Court does not consider whether the board met its obligations under G.L. 1956 § 45-24-61 ("Following a public hearing, the zoning board of review shall render a decision within a reasonable period of time. . . . Decisions shall be recorded and filed in the office of the zoning board of review within thirty (30) working days from the date when the decision was rendered").
[5] Superior Court Rule of Civil Procedure 80(b) provides that "[a] copy of the complaint shall be served. . . in the manner provided by Rule 5." Rule 5(b) provides that "[s]ervice . . . shall be made by delivering [or mailing] a copy" of the complaint to a party or their attorney.
In the present matter, DeLuca served his complaint upon each of the defendants via a constable, by hand delivery to the board's director, and with a summons, in the manner provided for by Super. R Civ. P. 4, as if a civil action, rather than a civil-appellate proceeding. See Blackstone Park Improvement Ass'nv. State of Rhode Island Board of Standards and Appeals,448 A.2d 1233, 1241 n.6 (R.I. 1982) (holding that an appeal from an administrative action is essentially an appellate proceeding and not a civil action).
[6] The intervenors are Albert R. and Barbara Algeni, David K. Anderson, Stephen and Mary Louise Beckler, Francis M. Broderick, Angela Buonanno, Jean A. Cole, John G. and Barbara B. Gordon, George J. and Virginia M. King, John Kydd, Lee Ann Miele, Kenneth J. and Myrto Morrissey, Janet Page, Douglas L. and Mary D. Raymond, Franklin H. and Claire S. Robinson, Jr., Matthew J. Serpa, Deborah E. Baxter-Ballek, and Lincoln D. and Nancy L. Vehmeyer, Jr.
While not fatal, four of the intervenors (Lincoln Vehmeyer, Jr., George J. King, John Kydd, and Matthew J. Serpa) were entitled to service of the complaint as an initial matter because they appeared at the hearing and voiced their opposition to the relief requested. Super. R. Civ. P. 80(b) ("[a] copy of the complaint shall be served . . . upon all other parties to the proceeding to be reviewed"); see also Marteg Corp. v. ZoningBoard of Review, 425 A.2d 1240, 1242 (R.I. 1981); Caran v. Freda,108 R.I. 748, 752, 279 A.2d 405, 408 (R.I. 1971) ("In order to benefit from the rule, we deem it necessary that the record of the zoning board show that the individuals who appeared at the zoning hearing are there as adversaries of the appellants").
Another individual, Walter Page, appeared at the hearing and voiced his objection but did not join with the intervenors. Although there is no certificate of service indicating that Mr. Page was served with a copy of the complaint, given the Court's disposition of this matter, the Court does not further concern itself with the failure of the appellants to serve him with a copy of the complaint.
[7] The Court concludes that Rules 8(f) and 9(c) of the Superior Court Rules of Civil Procedure are "rules of civil procedure which are consistent with the nature of an appellate proceeding [and that they thus] may be applied in furtherance of th[e] goal" "`to secure the just, speedy, and inexpensive determination of every action,"' Carbone v. Planning Board ofAppeal, 702 A.2d 386, 389 (R.I. 1997).
[8] Narragansett Zoning Ordinance § 11.6, at 61; G.L. 1956 § 45-24-35 ("Words or terms in any zoning ordinance, whether or not defined in the ordinance, that are substantially similar to words or terms defined in § 45-24-31 shall be construed according to the definitions provided in this chapter.").