DECISION
Before this Court is an appeal from a June 3, 2005 decision by the Town of Foster's Zoning Board (Board or Zoning Board) which denied Nelson D. Martins' (Plaintiff or Mr. Martins) application for a dimensional variance. Jurisdiction is pursuant to G.L. 1956 § 452-4-69.
 FACTS AND TRAVEL
In early November of 1979, Linda Walden acquired real estate, located in Foster, Rhode Island, from Wayne Gergler (Mr. Gergler). This property, which was intersected by a public road, Central Pike, was listed on the deed as a single lot, Lot 52. On November 29, 1979, Mrs. Walden deeded part of Lot 52, a triangular piece of land,[1] to Mr. Gergler as Lot 52B.[2] Subsequent to this transaction, Mr. Gergler sold Lot 52B to Mr. Martins, the Plaintiff.
In 1981, the Plaintiff, with the apparent intent to construct a single family residence, sought to have Lot 52B certified as a substandard lot of record.[3] The Foster Building and Zoning Official (Zoning Official), however, declined to certify Lot 52B as a substandard lot of record. The Plaintiff appealed this decision to the Board, which upheld the Zoning Official's determination. In affirming the Zoning Official's decision, the Board based its decision on evidence drawn from the plat maps and the deeds in the public records, which covered both Lot 52 and Lot 52B.[4]
More than twenty years later, on December 3, 2004, the Plaintiff applied to the Zoning Board for a dimensional variance. Included with that application was a letter from the current Foster Zoning Official stating that Lot 52B is a substandard lot of record.[5] Mr. Martins seeks a dimensional variance, so as to permit the placement of an individual sewage disposal system (ISDS) for a single-family residence, within the required setbacks mandated by Article VI, Section 6 of Foster's Zoning Ordinance.[6] The proposed ISDS would be located 200 feet from wetlands that border one side of the property, ten feet from Old Foster Center Road, and thirty-four feet from Central Pike. Plaintiff seeks relief from the provision of Article VI, Section 6 which requires an ISDS to be located at least sixty feet away from a bordering public road.
The Zoning Board heard Mr. Martins' application on February 9, 2005. At this hearing, the Board reviewed the letter from the Zoning Official stating that Lot 52B is a substandard lot of record, a letter from the Rhode Island Department of Environmental Management (DEM),[7] several wetland surveys, a plat map, and the deed covering Lot 52B. Several abutters objected to the proposed dimensional variance, claiming that the survey maps were deficient, in that they omitted an abutter's well that was within one hundred feet of the proposed ISDS,[8] and exaggerated the lot's square footage. Others objected to the Board's jurisdiction to hear the application, suggesting to the Board that its earlier 1982 decision, finding Lot 52B to not be a substandard lot of record, precluded the application before it.
On June 3, 2005, the Board issued a written decision which denied the Plaintiff's application for a dimensional variance, finding that the lot was not a substandard lot of record and thus, not a buildable lot. Specifically, the Board held that it was bound by its 1982 decision, and that the applicant had failed to provide evidence which warranted a reversal of the earlier determination. Mr. Martins filed a timely appeal with this Court on June 21, 2005.
 STANDARD OF REVIEW
The Superior Court's review of a zoning board's decision is governed by G.L. 1956 § 45-24-69(d), which provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may "not substitute [his or her] judgment for that of the zoning board if [he or she] conscientiously finds that the board's decision was supported by substantial evidence."Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825
(1978). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Review of NorthKingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswellv. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)). Thus, the reviewing court must examine the record to determine whether substantial evidence exists to support the Board's decision. Compare New England Naturist Assoc., Inc. v.George, 648 A.2d 370, 371 (R.I. 1994) (quashing Superior Court judgment based on erroneous ruling), with von Bernuth v.Zoning Bd. of Review of New Shoreham, 770 A.2d 396, 401-02
(R.I. 2001) (denying relief granted by zoning board based on lack of substantial evidence and remanding to Superior Court).
 ANALYSIS
The gravamen of the Plaintiff's appeal is that the Board's decision was arbitrary, capricious, and clearly erroneous because it denied the dimensional variance on the grounds that the lot was not a substandard lot of record. The Plaintiff also alleges that the Board's decision effectively amounts to a taking without just compensation in violation of the Fifth andFourteenth Amendments of the United States Constitution, and avers that reasonable litigation expenses should be awarded pursuant to the Equal Access to Justice for Small Businesses and Individuals Act, G.L. 1956 § 42-92-1, et. seq.
 I.
A dimensional variance provides relief from one or more of the dimensional restrictions that govern a permitted use of a lot of land, such as area, height, or setback restrictions. Sciacca v.Caruso, 769 A.2d 578, 582 n. 5 (R.I. 2001). In order for a request for a dimensional variance to be granted, a zoning board applicant must satisfy the requirements[9] of both §45-24-41(c)[10] and (d)(2).[11] Furthermore, the applicant must also show, by definition, that the dimensional variance applies to a legally permitted beneficial use. §45-24-31(61)(ii).[12]
In Foster, the minimum lot size required to build a single-family residence structure in a district zoned A/R is 200,000 sq. ft. See Article III, Section 13. An exception to this regulation is effectively granted when a lot that does not meet these area restrictions legally existed before the Town of Foster adopted its Zoning Ordinance in July of 1967. These lots are called substandard lots of record. See Article II (80). Thus, the construction of a single-family residence (and an attendant septic system) constitutes a legally permitted beneficial use a property zoned A/R, when the lot area is either 200,000 sq. ft. or larger, or a substandard lot of record.[13] Accordingly, if the Board concludes that a lot neither meets the dimensional regulations, nor qualifies as a legal substandard lot of record, it is powerless to grant a dimensional variance because the location of an ISDS system is a superfluous consideration when the building of such a structure is not even a legally permitted use. Cf. Northeastern Corp. v.Zoning Board of Review of the Town of New Shoreham,534 A.2d 603, 605 (R.I. 1987) (stating that the zoning board was "powerless" to grant a dimensional variance or deviation where the use is granted by way of a special exception).
The Plaintiff's application requested dimensional relief from Article VI, Section 6, which requires, in part, an ISDS to be located at least sixty feet from a public road. But, as noted, a precondition to the dimensional variance analysis mandates an inquiry as to whether the requested variance applies to a legally permitted beneficial use. It is undisputed that Lot 52B does not meet the dimensional requirements to be a buildable lot: at most, the lot is only 68,602 sq. ft. in size. Likewise, the Board, upholding its earlier decision, concluded that Lot 52B was not a substandard lot of record. Thus, because the construction of a single family residence and ISDS is not a legal beneficial use of the property, the Board was powerless to grant the variance. Its decision was not made in error, nor was it arbitrary or capricious.
 II.
The Plaintiff alleges, however, that the lot's status as a substandard lot of record was improperly considered by the Board, and that the doctrine of administrative finality was erroneously applied. Where a zoning board hears an application for relief and denies it, the doctrine of administrative finality bars a subsequent application for substantially similar relief absent a showing of a change in material circumstances in the time intervening between the two applications. Audette v. Coletti,539 A.2d 520, 522 (R.I. 1988). Both substantively and on its face, an application for a dimensional variance is not substantially similar to an appeal regarding a lot's status as a substandard lot of record. Thus, in this case, the doctrine of administrative finality did not prevent the Board from hearing the Plaintiff's application for a dimensional variance because the earlier 1982 application concerned an appeal of a decision regarding Lot 52B's status as a substandard lot of record. The Board correctly determined that it could review the application.
Likewise, it was fully within the Board's powers to review whether Lot 52B was a substandard lot of record. When an individual applies to a zoning board for review, the board is empowered to review the application in its entirety. SeeGardiner v. Board of Review, 101 R.I. 681, 688, 226 A.2d 698,702 (1967) (noting that a zoning board application, together with the accompanying forms, "tells the whole story" by detailing the dimensions, history, and precise location of a lot). To conclude otherwise would unreasonably constrict a zoning board's ability to effectively fulfill its obligations without confusion or delay. The Town of Foster's variance application specifically asks whether the lot at issue is a substandard lot of record. It further requests the applicant to supply the Board with a certificate from the Zoning Official substantiating this claim. These preliminary considerations are not a mere patina: when an application for a dimensional variance is made, review of whether the lot is a substandard lot of record is a predicate issue the Board may consider.
As already noted, Foster's Zoning Board concluded in 1982 that Lot 52B was not a substandard lot of record. If the Board were to now grant a dimensional variance, it would be necessary for the Board to both reconsider and reverse its earlier decision. The Rhode Island Supreme Court has held that administrative boards have an inherent power to reconsider their own decisions, because "the power to render a decision in the first instance embodies the power to reconsider that decision." In re Denisewich,643 A.2d 1194, 1197 (R.I. 1994) (finding that a hearing committee is authorized to reconvene in the event new testimony becomes available). It has also generally been held that "administrative tribunals endowed with quasi-judicial powers embody the inherent power to reconsider their judicial acts." Id. Accordingly, it was within the Board's authority to reconsider its 1982 decision.
When a board is required to reverse a prior decision in order to grant the application presently before it, an applicant must show that there has been a change in material circumstances which warrants the reversal. See Marks v. Zoning Bd. of Review,98 R.I. 405, 406, 203 A.2d 761, 763 (1964) (holding that "[t]he power to reverse an earlier determination . . . is a qualified one and is not to be exercised unless there has been a substantial or material change in circumstances intervening between the two decisions"). Thus, for the Board to reverse its earlier decision finding that Lot 52B was not a legal substandard lot of record, Mr. Martins had to show that there had been a material change in circumstances, between 1982 and 2005, which demonstrated that Lot 52B was a substandard lot of record.
Our Supreme Court has previously sketched the parameters of what constitutes a material change in circumstances:
 "What constitutes a material change will depend on the context of the particular administrative scheme and the relief sought by the applicant and should be determined with reference to the statutes, regulations, and case law that govern the specific field. The changed circumstances could be internal to the application, as when an applicant seeks the same relief but makes important changes in the application to address the concerns expressed in the denial of its earlier application. Or, external circumstances could have changed, as when an applicant for a zoning exception demonstrates that the essential nature of land use in the immediate vicinity has changed since the previous application." Johnston Ambulatory Surgical Assocs. v. Nolan, 755 A.2d 799, 811 (R.I. 2000).
The burden to show this material change is on the applicant.Id. At the hearing, the following evidence was provided by the Plaintiff regarding the lot's status as a substandard lot of record: a letter from the current Zoning Official stating that the lot is a substandard lot of record because of the installation of Central Pike, which now separates Lot 52 and Lot 52B;[14] testimony by the Zoning Official reiterating this position (Tr. at 15); and testimony by Brian E. Carpenter, who testified on behalf of the Plaintiff, and cited to a 1990 letter by an attorney, which suggested that a substandard lot of record was created by the installation of a road (Tr. at 30-31). It seems that any contention by the Plaintiff that there has been a material change in circumstances must rest primarily on the proposition that the installation of a road over a single lot, before the enactment of the Zoning Ordinance in 1967, created, per se, new lots by bisecting a piece of property into at least two, non-contiguous pieces. The Court can not agree with this proposition. No case law, in either Rhode Island or in any state, could be found which supports this conclusion.
It is not the duty of this Court to speculate whether any type of servitude may or may not exist on Lot 52 or Lot 52B, or whether the lots were in fact two separate legal lots of record that existed before Foster's Zoning Ordinance. That burden belongs to the Plaintiff. In both its 1982 and 2005 decisions, the Board noted that it made its determination based on the recorded deeds. The prudence of this reasoning is reflected in the Zoning Ordinance. Article II (51)(b) of the Zoning Ordinance states that a lot is defined as "a parcel of land whose boundaries have been established by some legal instrument such as a recorded deed or recorded map and which is recognized as a separate legal entity for purposes of transfer of title." Article II (57) defines a lot of record as a "parcel of land recorded by deed or recorded plat in the office of the Town Clerk of Foster." Foster's current Zoning Official reiterated this paradigm, as it applies to the case at bar, when he testified that prior to 1979 there was only one deed covering the land that is now Lot 52 and Lot 52B.[15] (Tr. at 15.) Accordingly, it is beyond this Court's discretion to declare that the Board's decision was clearly erroneous, or arbitrary and capricious: substantial evidence supports their decision. It is undisputed that Lot 52B was first recorded by deed in Foster's Town Clerk Office in 1979, after the Zoning Ordinance was adopted.
 III.
The Plaintiff's penultimate claim alleges that Lot 52B is rendered useless for all reasonable purposes because of the Board's decision. The Plaintiff alleges that because the property is rendered useless, the Board's decision amounts to a taking in violation of the Fifth and Fourteenth Amendments of the United States Constitution.
The Fifth Amendment to the U.S. Constitution provides that no person shall be deprived of property, "without due process of law; nor shall private property be taken for public use, without just compensation." This provision applies to the states and their subdivisions by the due-process clause of theFourteenth Amendment. Under the Rhode Island Constitution, Article I, Section 16, "private property shall not be taken for public uses, without just compensation." Our Rhode Island Supreme Court has ruled that "use regulations that are reasonably necessary to protect the public health and safety are permissible exercises of the police power which do not require compensation, provided that they do not become arbitrary, destructive, or confiscatory."Annicelli v. South Kingstown, 463 A.2d 133, 139 (R.I. 1983) (citations omitted). Conversely, a zoning ordinance that deprives an owner of all beneficial use of his property is confiscatory and requires compensation. Id. To determine if there has been a taking, Courts look to whether a restriction practically or substantially renders the land useless for all reasonable purposes. Id.
Lot 52B is zoned for agricultural and residential use (A/R). Without citation, the Plaintiff maintains that lot 52B can not be used for agricultural uses (what the Plaintiff calls "ancillary uses"), because of an alleged Zoning Board policy requiring that property zoned A/R must be used for residential purposes before agricultural purposes. Our Supreme Court has held that this Court is powerless to review matters that are outside of the record.See Fiske v. Zoning Bd. of Review, 70 R.I. 426, 431,40 A.2d 435, 438 (1944). No evidence supporting the existence of this policy was provided, nor was this alleged policy addressed at the hearing. Thus, because this claim is based on an undocumented, unsubstantiated assertion that was not addressed at the hearing, this Court is powerless to review the Plaintiff's claim on its merits. The Plaintiff has failed to demonstrate that Lot 52B is useless for all reasonable purposes and that the Board's decision constitutes a taking in contravention of either the Fifth orFourteenth Amendments of the U.S. Constitution.
 IV.
The Plaintiff's final claim avers that reasonable litigation expenses should be awarded pursuant to the Equal Access to Justice for Small Businesses and Individuals Act, § 42-92-1, et. seq. Under this statute, expenses can be awarded to those litigants who prevail against an agency determination on appeal.See § 42-92-1(b). No expenses are warranted here because the Court is affirming the Zoning Board's decision. Accordingly, this issue requires no further analysis.
 CONCLUSION
For the foregoing reasons, the Board's decision denying the Plaintiff's application for a dimensional variance is affirmed. Counsel shall enter an order pursuant to this decision.
[1] This triangular parcel of land constituted the entire property south of Central Pike, thus creating two newly shaped lots that were no longer bisected by a public road.
[2] The lot is fully described as Plat 11, Lot 52B, Central Pike, Pole 103 and 104, and is located in a district zoned as agricultural/residential (A/R). According to the plat map, Lot 52B is bordered by lot 90D to the south, Lot 91 to the west, Old Foster Center Road to the east, and Central Pike to the north.
[3] Article II, 80 of the Foster Zoning Ordinance defines a substandard lot of record as "[a]ny lot lawfully existing at the time of adoption or amendment of a zoning ordinance and not in conformance with the dimensional and/or area provisions of that ordinance." Article V, Section 1 of the Zoning Ordinance details further restrictions which limit the use of a substandard lot of record. This Section states, in relevant part:
 "Where no adjacent land is in the same ownership so as to form a larger land parcel, a lot smaller than the minimum dimensions and area required by this Ordinance which was a lot of record on the effective date of this Ordinance [July 1967] may be used for a permitted use provided that such lot have a minimum area of 10,000 square feet and a minimum width of one hundred feet (100 feet). All dimensional requirements of the district shall be complied with except that side and rear requirements be reduced as necessary by the Zoning Board of Review in case of a lot with a width of less than one hundred fifty feet (150') or a depth of less than two hundred feet (200')."
This provision also notes that before a building permit may be issued, the lot must be approved and certified in writing as a substandard lot of record by Foster's Zoning Official.
[4] The 1982 Board decision was discussed and entered into the record at the Martins' 2005 variance appeal. It should also be noted that the Plaintiff submitted an application to the Zoning Board in 2003, but withdrew it before there was a hearing.
[5] The letter, which is addressed to the Plaintiff's real estate agent, states in full:
 "I have reviewed all the data pertaining to the above referenced lot [Lot 52B] and have determined that the lot is a sub-standard lot. The lot was created by construction of Central Pike dividing the lot into two lots. It has an assessors lot number and I am considering this a legal substandard lot."
[6] Article VI, Section 6 requires a septic tank to be located at least one hundred feet from a dug or drilled well, and that the leaching field must be at least one hundred feet from the property line, or, where the property line borders a public road, at least sixty feet from the public road. This Section also requires an ISDS that leaches waste into the soil to be located at least two hundred feet from any pond, stream, spring, or brook.
[7] This letter was a response to an application by the Plaintiff, which sough a "Request for Preliminary Determination." In the letter, Charles A. Horbert, the Permitting Supervisor of the Freshwater Wetlands Program, concluded that Mr. Martins' proposed construction plan for the residence and the ISDS may be permitted as an insignificant alteration, provided that he meet an enumerated sixteen conditions.
[8] Article VI, Section 6 of Foster's Zoning Ordinance requires that an ISDS be located at least 100 feet from a well.
[9] These requirements are reflected in Article VII, Section 2, A, 1-7 of Foster's Zoning Ordinance.
[10] Section 45-24-41(c) states in full:
 "In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
[11] Section 45-24-41(d)(2) states:
 "(d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that: . . . .
 (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief."
[12] Section 45-24-31(61)(ii) defines dimensional variance as the:
 "Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations." (Emphasis added.)
[13] Article V, Section 1 of Foster's Zoning Ordinance requires that a legal substandard lot of record may be used for a permitted use so long as it has a "minimum area of 10,000 square feet and a minimum width of one hundred feed (100 feet)." Likewise, a building permit will be issued only when the Town's Building and Zoning Official approves and certifies, in writing, the lot as a substandard lot of record.
[14] The Zoning Official's letter does not constrict the Board's ability to consider this matter, nor does it mandate that the Board must follow either its reasoning or its conclusion.See Article XI, § 3, C (noting that the Board possesses all the powers of a Zoning Official from whom an appeal is made); seealso Article XII, Section 4 (explicating the Board's authority to render decisions).
[15] The Plaintiff provided the Board with no evidence that controverted the recorded deeds.