Harold NEWTON et al.

v.

## The ZONING BOARD OF REVIEW OF the CITY OF WARWICK et al. and Giuseppe Illiano et al.

### No. 97–84–M.P.

Supreme Court of Rhode Island.

June 12, 1998.

Paul M. Finstein for Plaintiff.

James S. Lawrence, Timothy J. Moore, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

### OPINION

WEISBERGER, Chief Justice.

This case comes before us on a petition for certiorari filed by Giuseppe Illiano and Eugenia L. Illiano (applicants), who had successfully applied for a special-use permit and a dimensional variance from the Zoning Board of Review of the City of Warwick (board). The applicants by their petition seek review of a judgment of the Superior Court that reversed the board's decision granting a special-use permit and a dimensional variance to build a six-unit multifamily dwelling. On consideration of the record in this case, we deny the petition for certiorari and affirm the judgment of the Superior Court. The facts and travel of this case insofar as pertinent to this petition for certiorari are as follows.

The applicants are the owners of a certain parcel of real estate known as lot No. 3 on assessor's plat No. 329 located at 2038 Warwick Avenue in the city of Warwick. This parcel is a corner lot and constitutes an area of approximately 13,741.65 square feet. The lot has a frontage of 96.66 feet on Warwick Avenue and 145.26 feet on Bethel Street. At the time of the hearing in the Superior Court, an unoccupied and uninhabitable single-family residential structure was located on the lot.

The subject lot was zoned in the category "office." The applicants applied pursuant to § 906.3(C) of the City of Warwick Zoning Code of Ordinances (ordinance) to demolish the existing residential structure and replace it with a two-and-a-half story brick multifamily dwelling that would contain six one-bedroom units. Such a structure could be authorized by a special-use permit pursuant to section 300, table 1 of the ordinance. In addition to the special-use permit, applicants requested dimensional variances from the requirements of minimum-lot area, side-lot line, rear-lot line, parking line, density, design, and landscaping.

The Superior Court found that the petition was duly advertised, abutting owners were given the required notice, and a public hearing was held before the board on June 20, 1995. At the public hearing applicants presented testimony from a real estate expert and a traffic engineer. The applicants' testimony indicated that the granting of the special-use permit and the dimensional variances would have no adverse affect on the surrounding property and would generate less traffic than an office building. The applicants also presented a petition signed by certain neighbors and abutting property owners as well as individual letters from three neighbors in support of the proposed multifamily dwelling.

Certain remonstrants opposed the application. Two neighbors testified concerning their belief that the proposed multifamily dwelling would cause the value of their property to depreciate and would result in increased traffic. The remonstrants submitted the letters of three neighbors who expressed similar objections. No expert testimony was presented on behalf of remonstrants. The planning department of the city recommended that the petition be denied on the ground that it did not meet the development regulations contained in the zoning ordinance, that it presented an "over-intensification of the property," and that it did not qualify for a use variance. The planning

board pointed out that the property could be developed as a two-family dwelling or an office building.

On October 17, 1995, the board rendered a decision granting all the relief requested in the application. The board's decision set forth seventeen findings of fact, which in summary determined that the proposed multifamily dwelling would not be injurious to the general health, safety, or welfare of the surrounding area and that applicants would suffer hardship if the dimensional variances were not granted and that such hardship would amount to more than a mere inconvenience.

Thereafter, remonstrants, Harold Newton, Susan Cayer, and Kenneth Brown, filed a complaint in the Superior Court, seeking review of the board's decision and alleging that the decision was in violation of the governing law. A justice of the Superior Court reviewed the decision pursuant to the provisions of G.L.1956 § 45–24–69(D), which provide in pertinent part:

"The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:

(1) In violation of constitutional, statutory, or ordinance provisions;

(2) In excess of the authority granted to the zoning board of review by statute or ordinance;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Applying these statutory standards, the Superior Court justice determined that the board's decision granting the application was in violation of statutory and ordinance provisions and was affected by error of law. He therefore reversed the decision of the board and entered judgment accordingly.

The applicants sought review of this judgment by filing a petition for certiorari. We granted the writ June 20, 1997, in order to review the judgment of the Superior Court.

In holding that the board had as a matter of law exceeded its authority in granting the application, the Superior Court justice relied on *Northeastern Corporation v. Zoning Board of Review of New Shoreham*, 534 A.2d 603 (R.I.1987), which held in effect that a dimensional deviation could not be granted in a situation in which a use was permitted by way of a special exception. *Id.* at 605 (citing *Zammarelli v. Beattie*, 459 A.2d 951, 954 (R.I.1983)). The applicants challenge this holding on the ground that since our opinion in *Northeastern Corporation*, the Legislature has adopted a new Zoning Enabling Act, §§ 45–24–41 and 45–24–42. This amendment was adopted in 1991 (P.L.1991, ch. 307, § 1), and the applicants argue that it superseded earlier case law.

There is no question that the amended Zoning Enabling Act would supersede case law in so far as such case law would be inconsistent with the amended statute. *See Town of East Greenwich v. Narragansett Electric Co.*, 651 A.2d 725, 729 (R.I.1994). However, our opinion in *Northeastern Corporation* is not superseded by the amended statute or by the ordinance adopted pursuant thereto.

The ordinance in effect at the time of this application authorized the board to allow a multifamily dwelling to be built in an area zoned for office use by special-use permit. Such a permit would be granted in accordance with § 906 of the ordinance and further subject to § 502 thereof as well as the use regulations contained in § 302. Specifically the standards for granting a special-use permit are set forth in § 906.3(C) of the ordinance as follows:

"In granting a special use permit, the board shall require that evidence to * * * the satisfaction of the following standards be entered into the record of the proceedings:

(1) That the special use is specifically authorized by this ordinance, and setting forth the exact subsection of this ordinance containing the jurisdictional authorization;

(2) That the *special use meets all of the criteria set forth in the subsection of this ordinance authorizing such special use;* and

(3) That the granting of the special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this ordinance or the comprehensive plan of the city."

(Emphasis added.)

Section 502.3 of the ordinance sets forth the minimum standards for lot size, side- and rear-lot requirements, density, parking, exit, entrance, and landscaping. The ordinance specifically provides that a special-use permit to erect a multifamily dwelling in an area zoned for office use must meet these minimum standards. It is undisputed, as found by the Superior Court, that applicants' lot did not meet any of these developmental standards. Section 502.3 of the ordinance required a minimum of 20,000 square feet for the construction of a multiunit residence in an office zone. It is undisputed that the subject lot contains a total area of 13,741.65 square feet. It is also undisputed that the lot would not provide for the necessary side-lot, or rear-lot dimensions set forth in the ordinance. Indeed, applicants sought relief from these dimensional standards. As we held in *Northeastern Corporation, supra,* such a dimensional variance could not be granted in conjunction with the issuance of a special-use permit. The ordinance is unambiguous and imperative in requiring that a special use meet all the criteria authorizing such special use. These criteria would include the specific standards set out in § 502.3 of the ordinance.

It is also instructive to consider the terms of the amended statute pursuant to which this ordinance was adopted. Section 45-24-31(61)(b) deals specifically with the issue of a dimensional variance as follows:

"*Dimensional Variance.* Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."

The terms of this portion of the statute would unequivocally command that a dimensional variance be granted only in connection with the enjoyment of a *legally permitted beneficial use,* not in conjunction with a use granted by special permit. This point makes our analysis in *Northeastern Corporation, supra,* completely applicable to the construction of the present statute as well as the construction of the Warwick Zoning Code of Ordinances. Consequently the Superior Court justice was correct in his determination that a special-use permit could not be combined with a dimensional variance.

For the reasons stated, the petition for certiorari is denied. The writ previously issued is quashed, and the judgment of the Superior Court is affirmed. The papers in the case may be remanded to the Superior Court with our decision endorsed thereon.