DECISION
This is an appeal from a June 16, 1997 decision of the Zoning Board of Review of the Town of Narragansett (the Board). The decision appealed from is the grant of 85 Ocean Road, LLC's (the Applicant's) application for a special use permit to renovate and expand a hotel that is an existing, legal nonconforming use; a height variance; and a parking variance. The plaintiffs, Antonio Abbaticola and Marci Abbaticola (plaintiffs), are neighbors who own property within 200 feet of the subject hotel. Jurisdiction in this Court is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The Applicant owns property located at 85 Ocean Road, in Narragansett, Rhode Island (the property). The property is designated as Lot 135 on Assessor's Plat D. See Second Amended Application, dated 8/22/96 (Application). The Applicant currently operates a hotel, motel, and apartments called the Atlantic House at that location. Under prior ownership, the building was used as a family hotel until its conversion to condominiums in the early 1980s. In 1995, the Applicant purchased the property and began operating it, once again, as the Atlantic House hotel.
The property is located in an R-10A residential zone, where hotels, motels, and apartments are not permitted uses. See
Application and Narragansett Zoning Ordinance (Ordinance), § 6.3. However, because the Atlantic House existed before the applicable Ordinance rendered it nonconforming, the Applicant was permitted to continue operating the Atlantic House as a legal nonconforming use. See Ordinance, § 9.1(2). Section 9.1(2) provides: "(2) Nonconforming use of buildings or structures. The nonconforming use of a building or structure may be continued, provided that the building or structure is not enlarged, extended or reconstructed without the grant of a special use permit. . . ."
On or about August 22, 1996, the Applicant filed an amended application with the Board seeking special use permits and variances in order to alter and expand the Atlantic House. The Applicant proposes "to expand the existing hotel [from thirty-seven, existing rooms] to [sixty-five] rooms, construct a deck and other site improvements within the coastal overlay zone, legalize the height of the existing structure with a height variance, and reduce the requirement of [one and one-half] parking spaces per room to one parking space per room." See
Findings of Fact, ¶ 4; see also Project Summary, dated 1/22/97, submitted to Planning Board. The Applicant claims that it intends to apply for a special use permit with the Coastal Resources Management Council (CRMC) as well. See Application.
On January 23, 1997 and March 13, 1997, the Board held advertised, public hearings to consider the Application. The Applicant offered expert testimony from its architect, John Riley; its landscape designer, Sue McDermott; and its traffic engineer, Robert Brown (Brown). The Board also heard from Piyush J. Pitel, the operating manager of the hotel. See Findings of Fact, ¶¶ 5, 7-9. On June 16, 1997, the Board recorded its written decision dated May 28, 1997 in the Narragansett Town Hall. In its decision, the Board approved the Application for the special use permits and variances with a number of stipulations.
The plaintiffs filed a timely appeal to this Court. On appeal, the plaintiffs allege that the Board exceeded its authority by granting the special use permit to expand the nonconforming use because the reconstruction would increase the existing degree of dimensional nonconformity. See § 10.1(1);see also Application. The plaintiffs also argue that the Board's grant of a special use permit violates § 4.4, entitled "Coastal resources overlay district," because the proposed structure will be within 200 feet of the Atlantic Ocean. See
§ 4.4(c)(8). Lastly, the plaintiffs maintain that the Board further erred by granting dimensional variances.
 Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of the zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence.Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n. Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters. AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
 Expansion of Nonconforming Use
On appeal, the plaintiffs allege that the Board exceeded its authority by granting the special use permit to expand the nonconforming use because the reconstruction would increase the existing degree of dimensional nonconformity. See § 10.1(1);see also Application. With regard to height restrictions, the Applicant claims that its proposal does not actually increase the height of the existing structure. In support of this contention, the Applicant relies upon the Board's determination in its findings of fact that the existing structure was already thirty-two feet high, the height of the proposed building. Accordingly, the Applicant claims its request for a height variance in the Application was unnecessary. With regard to the other generally alleged nonconformities, the Applicant argues that § 10.1(2), and not § 10.1(1), applies to the footprint of the building, thereby evidencing its compliance with dimensional requirements.
The Applicant proposes to expand the Atlantic House, which is presently 10,860 square feet in size, to 13,575 square feet. See
Findings of Fact, ¶¶ 5. Any permitted expansion of the nonconforming use is governed by § 10 of the Ordinance which requires compliance with all of the following provisions (Emphasis added):
 "ALTERATIONS TO NONCONFORMING STRUCTURES AND USES
 10.1. Special use permit required.
 The zoning board of review may grant a special use permit on the enlargement, extension, structural alteration or reconstruction of an existing building or structure which constitutes a nonconforming use following site plan review, provided the work complies with all of the following applicable development standards:
 (1) The reconstructed building does not result in an increase in the existing degree of any dimensional nonconformity; [sic]
 (2) The footprint of the building or structure is not expanded, extended, or enlarged by greater than twenty-five (25) percent of the existing building footprint as of October 11, 1989;
 (3) The exterior appearance of the reconstructed building remains substantially the same or is changed to enhance its appearance on the site and harmony with the surrounding area;
 (4) It must be demonstrated that the site can accommodate the proposed level of use. Consideration shall include but not be limited to safety, traffic, parking, sewage disposal capacity, utilities, noise levels, odors and quality of water and air."
Section 10.1(1) provides that a nonconforming use may not be expanded if such expansion will result in an increase in dimensional nonconformity, notwithstanding the fact that the proposed structure complies with the 25% footprint-expansion requirement. Section 12.13(5) of the Ordinance, entitled "Development standards for motels and tourist courts," provides: "Height. No principal building shall be more than thirty (30) feet high." The Applicant requested a variance from this height restriction to build the new structure to a height of thirty-two feet. The plaintiffs argue that such a height variance precludes the grant of a special use permit pursuant to § 10.1(1).
After review of the Board's findings of fact, this Court finds that the plaintiffs' argument regarding the height variance lacks merit. The Board specifically found that: ". . . the existing structure as shown on the plans submitted is approximately 32' high as defined in the ordinance." See Findings of Fact, ¶ 6. Accordingly, if the height of the proposed structure is only thirty-two feet high, this will not result in any increase in dimensional nonconformity.
Although the proposed structure does not violate the dimensional, height regulation of the Ordinance, it nonetheless violates the dimensional, density requirement. With respect to nonconforming uses and structures, dimensional nonconformity refers to buildings or structures that do "not conform to the lot area, yard dimension, height, land coverage, off-street parking or loading, or similar dimensional requirements of [the] ordinance. . . ." § 9.1(3). The density requirement set forth in § 12.13(8) restricts the development of hotels to eight units per acre. The instant Application describes the total area of the Applicant's lot as 69,800 square feet, less than one and one-half acres. The present hotel consists of over thirty units, which is nonconforming. The applicant seeks to increase the number of units to sixty-five. This proposal to add over thirty new units on the same acreage violates § 10.1(1) of the Ordinance by increasing the proposed building's dimensional nonconformity.
 Parking Variance
Pursuant to § 7.9, "Automobile parking space," the Applicant is required to have one and one-half parking spaces per unit in its hotel. See § 7.9(2)[1]. Since the proposed structure will consist of sixty-five hotel rooms, the Ordinance mandates that at least ninety-eight parking spaces be made available. The Applicant applied for a thirty-three-space parking variance, which would require it to have only one parking space per unit.
The Board heard expert testimony from the Applicant's traffic engineer, Brown, and received exhibits "which showed no significant[,] adverse impact from traffic in and out of the proposed hotel. [Brown] also testified as to industry standards demonstrating that one parking space per room was an adequate level of parking for hotels without convention rooms." Findings of Fact, ¶ 8. Although no contradictory, expert testimony was offered, the Board's granting the Applicant a parking variance was in excess of the authority granted to it.
A parking variance is a dimensional variance. See Newton v.Zoning Board of Review of the City of Warwick, 713 A.2d 239, 242 (R.I. 1998); see also Bamber v. Zoning Board of Review of Foster,591 A.2d 1220, 1223 (R.I. 1991). The Board's grant of the dimensional parking variance, in conjunction with the grant of a special use permit under the Ordinance, is in direct contravention of § 10.1(1). Our Supreme Court has held generally that "a dimensional variance [can]not be granted in conjunction with the issuance of a special-use permit." Newton, 713 A.2d at 242; see also Northeastern Corp. v. Zoning Board of Review of New Shoreham, 534 A.2d 603 (R.I. 1987). Section45-24-31(61)(b), entitled "Dimensional Variance," "unequivocally command[s] that a dimensional variance be granted only in connection with the enjoyment of a legally permitted beneficial use, not in conjunction with a use granted by special permit" where the ordinance requires compliance with all the criteria for a special exception. Newton, 713 A.2d at 242.
 Coastal Resources Management Council
The plaintiffs also argue that the Board's grant of a special use permit violates § 4.4, entitled: "Coastal resources overlay district," because the proposed structure will be within 200 feet of the Atlantic Ocean. See § 4.4(c)(8). The Applicant's Atlantic House is located within the coastal resources overlay district. See § 4.4(a). Section 4.4(b) provides:
 "Special use permit uses. The zoning board of review may grant a special use permit following site plan review and approval for the following activities in the coastal resources overlay district, provided the proposed project or activity complies with all applicable development standards and other requirements imposed by this ordinance and by the state coastal resources management council: . . .
 (3) Constructing structures, roads, parking areas, or other facilities;. . . ."
Compliance with all applicable development standards includes: "All structures (except boat launching ramps and residential docks, piers, and wharves) . . . will be set back at least two hundred (200) feet from the edge of coastal salt ponds . . . and Type 1[2] and 2 waters as those waters are defined by the Coastal Resources Management Council. . . ." Section 4.4(c)(8). The Application, dated August 22, 1996, reads: "[t]he applicant will also be applying for a special use permit from Coastal Resource[s] Mgt. Coin. [sic]." In its Project Summary submitted to the Planning Board on or about January 22, 1997, the Applicant revealed that it would be requesting "[a] variance and special use permit under the Coastal Resource[s] Overlay District, Section 4.4 (200' required) for the structure; a 150' variance for site alterations (landscaping)."
The Board erred and acted in excess of its authority in granting a special use permit before the Applicant received the required relief from the CRMC. See § 4.4(b). In accordance with § 4.4(b), the Board may grant a special use permit following site plan review of activities in the coastal resources overlay district "provided the proposed project or activity complies with all applicable development standards and other requirements imposed by [the] ordinance and by the state coastal resources management council." (Emphasis added.) Id. When the Board granted the special use permit, neither did the proposed construction comply with those standards and requirements, nor had the CRMC granted a variance relieving the Applicant from complying with them.
 Findings of the Board
While the Board made an overall determination that the proposed expansion would "not be contrary to the public interest[;] will further substantial justice[;] and will be consistent with the purposes and objectives of the zoning ordinance[,]" it erred in granting the requested relief. Accordingly, this Court finds that the Board's decision was in violation of statutory and ordinance provisions, was in excess of the Board's authority, and was affected by error of law. As such, the Board's decision is hereby reversed.
Counsel shall submit the appropriate order for entry.
[1] The Ordinance later provides that the development of hotels requires that there be two parking spaces per unit. However, whether the Court interprets the Ordinance as requiring one and one-half spaces per unit or two spaces per unit, this Court's decision will be the same. See § 12.13(9).
[2] CRMC formulated the State of Rhode Island Coastal Resources Management Program (CRMP). Sec. 200.1 of the CRMP defines Type 1 conservation areas as:
 (1) water areas that are within the boundaries of designated wildlife refuges and conservation areas, (2) water areas that have retained undisturbed natural habitat or maintain scenic values of unique or unusual significance, and (3) water areas that are particularly unsuitable for structures due to their exposure to severe wave action, flooding, and erosion.