DECISION
Appellant, Jeanette Vidal, seeks reversal of a July 5, 2000 decision of the Zoning Board of Review for the Town of West Warwick ("Zoning Board"). In its decision, the Zoning Board granted the application of MRSJ Partners, LLC ("MRSJ') for a special-use permit and dimensional variance. Appellant and MRSJ are neighboring landowners. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel 
MRSJ is the owner of a certain parcel of real estate known as lot No. 355 on assessor's plat No. 16, which is located at 8 St. John Street in West Warwick, Rhode Island ("property"). On or about June 30, 1999, MRSJ purchased the property from St. John the Baptist Church of Centerville Rhode Island, Inc. The property originally had been used as residential housing for nuns attending St. John's parish and subsequently was used as a physician's office. After the conveyance. MRSJ converted the property from commercial use to a live unit multi-family dwelling. However, at that time, multi-family dwellings were not permitted in the zoning district in which the property was located. The Office of the Building Official of the Town of West Warwick ("Building Official") received a complaint regarding the property and conducted an investigation On May 31, 2000, the Building Official found MRSJ to be in violation of section 4.5 of the Town of West Warwick Zoning Ordinance ("ordinance"), which prohibited the use of property in any district where the use was not specifically permitted by the ordinance. The Building Official concluded that "there [were] apartments m a building zoned Business." (Ltr. from Housing Inspector to MRSJ dated May 31, 2000.)
Thereafter, on September 18, 2000, MRSJ submitted an application to the Zoning Board requesting both a special-use permit to allow a five unit multi-family dwelling on the property and a dimensional variance for parking. Ten days later, on September 28, 2000. the Town Council amended the ordinance pertinent to the area where the property is situated and created a new non-residential district, the Village Commercial District. The amended ordinance permits a residential multi-family dwelling on the property by way of special-use permit. On January 23, 2001, MRSJ amended its original petition and sought a use variance to permit a four unit multifamily dwelling on the property as well as dimensional variances for parking and square footage requirements.
MRSJ's amended application met resistance from town officials prior to the time MRSJ appeared for hearing before the Zoning Board. On January 27, 2001, the Building Official commented on the amended application in a letter to the Town Clerk:
 "[w]e are now at a point where I feel the owner is trying to place a round peg in a square hole. Had the owner followed the legal procedures and applied for the necessary variances in the beginning I feel he would have enjoyed the beneficial use of the property. The proposed configuration of the structure provides for a dormitory style living at best and is no where near the square footage requirements for a single-family dwelling unit." (Ltr. from Stephen 1). Murray, Building Official, dated Jan. 27, 2001.)
Then, on February 1, 2001, Marc Jafee, Town Planner of the Town of West Warwick, issued a letter to the Members of the Planning Board and the Town Manager regarding MRSJ's application for a multi-family dwelling on the property. The Town Planner wrote:
 "the fundamental physical restrictions of the site combined with illegal occupancy call for an entirely new approach to use and the parameters within which this use should occur. It is recommended that the building be vacated within a reasonable time period, making every allowance for unwitting tenants which may have limited options. Once occupancy ceases, the owner should cooperate with the fire and building inspector to correct all code deficiencies, while at the same time redesigning the interior to provide consistent and legal living spaces. This will form the basis for a Special Permit application under the new Village Commercial district provisions. Site plans should include all interior configurations and exterior requirements. Parking and waste disposal facilities will remain as issues for zoning relief in any event, given unchangeable physical site limitations." (Mem. from Marc Jaffee dated Feb. 1, 2001.)
On February 12, 2001, he Planning Board reviewed the application and unanimously recommended denial of the requested relief. The reasons for the recommendation denying the application were "(1) the proposal is not consistent with the town's Comprehensive Plan of ensuring safe pedestrian circulation; (2) the units did not meet the minimum dimensional requirements of the Zoning Ordinances; and (3) there were too many inherent problems with the proposal." (Ltr. from Planning Board to Zoning Board dated April 25, 2001.)
MRSJ's amended application came on for heating before the Zoning Board on April 25, 2001. Apparently, after amending the application to request permission for a four unit multifamily dwelling, they modified their plans. When they appeared before the Zoning Board on April 25, 2001, MRSJ was seeking permission for a three unit multi-family dwelling and for a dimensional variance for parking only. Their new plan had yet to be reviewed by the Planning Board. (Tr. of April 25, 2001 hearing at 4, 5.) Appellant appeared at the hearing through counsel and objected to any action on the new plans submitted by MRSJ Id. at 9. The Zoning Board voted to return the amended application to the Planning Board and to reschedule the hearing to a later date. Id. at 11.
On May 30, 2001, MRSJ filed a request to amend its application to seek the following relief:
 "Use Variance under Section 5 (A)(2) (Two-Family Dwelling in a Non-Residential/Village Commercial District) and/or Section 4.5 (Unlisted Uses). . .Dimensional Variance for Off-Street Parking requirements under Section 5.9 and 5.9.10.7 et. seq. (Four Parking Spaces). . . Withdraw a previous request for a Dimensional Variance for Square Footage Requirements of each individual apartment unit under Sections 55 and 5.5.3. The proposed two-family dwelling would have square footage in excess of Seven Hundred Twenty (720) square feet per apartment." (Ltr to Zoning Board from MRSJ dated May 30, 2001.)
On June 4, 2001, the Planning Board considered MRSJ's most recent request and recommended approval of the proposed variances. (Decision at 1.)
On June 27, 2001, the Zoning Board heard MRSJ's application requesting a use variance to allow a two-family dwelling on the property and a dimensional variance for parking. At the hearing, the Town Solicitor recited the history and travel of the application. He also expressed his opinion that the holding in Newton v. Zoning Board of Review of the Cityof Warwick 713 A.2d 239 (R.L 1998) did not apply to the subject application. He opined that the West Warwick ordinance differed from the Warwick ordinance interpreted by the Court in Newton. If Newton applied, MRSJ would not be able to obtain both a. special-use permit and a dimensional variance. (Tr. of June 27, 2001 heating at 8-12.)
In response to the opinion expressed by the Town Solicitor that the holding in Newton would not bar MRSJ from seeking a special-use permit and a dimensional variance, MRSJ orally requested still another amendment to its application Id. at 14. MRSJ sought to change its request for a use variance to a special-use permit to allow a two-family dwelling on the property and continued to seek a dimensional variance for parking. Id. The Zoning Board granted MRSJ's oral request to amend its petition. MRSJ then proceeded to present evidence to meet the lesser standard required by one seeking a special-use permit as opposed to presenting evidence to attempt to establish the mores difficult requirements facing an applicant desiring a use variance.
After reviewing evidence and accepting testimony, the Zoning Board granted the application stating that:
 "1. [b]ased upon the foregoing findings of fact, the Zoning Board of Review upon Motion of Board Member, Frank Giorgio and seconded by Board Member Linda Sawyer granted the request for a Special-use Permit.
 2. Based upon the foregoing findings of fact, the Zoning Board of Review upon Motion of Board Member, Frank Giorgio granted the request for a dimensions variance from the parking requirements.
 3. The foregoing approvals are granted upon the condition that the applicant furnish a ten. (10) year lease with Holmes Jewelers for the lotting of four (4) parking spaces at its premises." (Decision at 2.)
Appellant filed a. timely appeal from the Zoning Board's decision. On appeal, Appellant argues that the Zoning Board's decision was in direct violation of both statutory and ordinance provisions. Appellant further maintains that the Zoning Board's grant of the special-use permit and dimensional variance was affected by error of law. Appellant requests that this Court reverse the Zoning Board's decision.
 Standard of Review 
The standard of review for this Court's appellate consideration of the Decision is outlined in G.L. 1956 § 45-24-69(D), which states:
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected i, y other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion"
When reviewing a zoning board decision., this Court mist examine the entire certified record to determine whether substantial evidence exists to support the finding of the board. Salve Regina College v. Zoning Bd.of Review, 594 A.2d 878, 880 (R.L 1991) (citing DeStefano v. Zoning Bd.of Review of Warwick 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979));Restivo v. Lynch, 707 A.2d 663 (R.L 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board is to weigh evidence1 with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase.574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of the zoning board and is compelled to uphold the board's decision if the Court "conscientiously rinds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey 495 A.2d 257 (RI. 1985) (quotingApostolou v. Genoyesi. 120 R.I. 501, 507, 388 A.2d 21, 825 (1978)). It is only if the record is "completely bereft of competent evidentiary support" that a board of appeal's decision may be reversed. Sartor v.Coastal Resources Management Council of Rhode Island, 434 A.2d 266, 272 (R.I. 1981).
 Notice 
At the hearing on June 27, 2001, the Zoning Board granted the oral motion of MRSJ to amend its application. Appellant argues that the Zoning Board erred in permitting the amendment and proceeding on the amended application without readvertising and rescheduling the hearing. As indicated, MRSJ's application before the Zoning Board was amended several times before it was heard and decided on June 27, 2001. MRSJ made its final request to amend its application during the actual hearing when it sought to change its request for a use variance to a special-use permit MRSJ's attorney stated:
 "[m]y request would be that if the council agrees with [the Solicitor's] interpretation of the West Warwick Zoning Ordinance, namely that we would in fact be allowed to have this application considered as a special-use permit, rather than a use variance, then definitely I would be making that request that the application be amended so that you do consider the special.use permit rather than a use variance." (Tr. of June 27, 2001 hearing at 17.)
Appellant's attorney later responded by stating:
 "[i]t's my understanding that the Board has allowed the applicant to go forward on the special-use permit. Notwithstanding that he amended his petition back in January of — January 23rd, I would indicate that there had been no prior notice of that to the applicant. However, given that so in that respect with respect to notice we raise an objection." (Tr. of lone 27, 2001 hearing at 49.)
The Zoning Board's grant of MRSJ's request to orally amend its petition for variances directly contravenes section 9.7.4 of the ordinance, which provides as follows:
 "[i]f the board allows an amendment to an original application which changes the terms under which the application as advertised or which alters the basic facts upon which the application was presented, the amended application shall be readvertised and referred to the planning board."
In the instant case, Appellant was prepared to raise her objections with respect to MRSJ's request for a use variance to permit a two-family dwelling on the property and a dimensional variance for parking as indicated in MRSJ's petition before the Zoning Board. Instead, at the hearing. Appellant was confronted with a change to the petition which altered the nature of the request before the Zoning Board-This Court finds that the Board failed to meet the requirements of section 9.7.4 of the ordinance.
The Rhode Island Supreme Court has addressed the issue of adequate notice in zoning matters on several occasions. In Carroll v. Zoning Boardof the City of Providence, 248 A.2d 321. 323. 104 R.I. 676, 678 (1968). the Court stated:
 "[i]n zoning matters, just as in other legal proceedings, notice is a jurisdictional prerequisite. It is purposed upon affording those having an interest an opportunity to present facts which might shed light on the issue before the board . . . and upon assisting `the board to do substantial justice to an applicant while preserving the spirit of the ordinance under consideration.' . . . A proper fulfillment of those purposes demands . . . notice reasonably calculated, wider all the circumstances, to apprise interested parties of the pendency of the section and afford them an opportunity to present their objections.'" (Citations omitted.)
The Zoning Board erred in permitting MRSJ to amend its petition at the heating. Consequently, the notice provided to Appellant did not "reasonably convey the required information." Id. at 323. The amendment to the application significantly changed the petition before the Zoning Board such that the "irregularities in the application and hearing" were "factually prejudicial to the petitioner here." Taft v. Zoning Board ofReview of City of Warwick. 76 R.I. 443, 447, 71 A.2d 886, 888-89 (1950). The instant case is similar to those cases in which the Court has deemed notice of a zoning matter inadequate. See Mello v. Board of Review ofCity of Newport, 94 R.I. 43, 177 A.2d 533, 536 (R.I. 1962) (notice failed to identify both lots on which property at issue was located); Boggs v.zoning Board of Review of the City of Newport, 264 A.2d 923, 926, 107 R.L 80, 85 (1970) (notice failed to identify both lots on which the property at issue was located); Paquette v. Zoning Board of Review of WestWarwick, 118 R.i. 109, 112, 372 A.2d 973, 974 (1977) (typographical error describing one of the affected lots as lot 754 rather than 574 was a fatal jurisdictional defect).
The presence of Appellant or her counsel at the hearing did not render the error harmless. It was not sufficient that she had an opportunity to present information. In some cases, a party's appearance before the Zoning Board may cure the potentially prejudicial effect of insufficient notice. In such situations, the objecting party still has an opportunity to present information which would assist the Zoning Board in the performance of its duties. See Ryan v. Zoning Board of Review of Town ofNew Shoreham, 656 A.2d 612. 616 (R.I. 1995); Perrier v. Board of Appealsof City of Pawtucket, 134 A.2d 141, 144, 86 R.I. 138, 144-45 (1957).
However, in this case, Appellant did not have an opportunity to adequately address the new issues raised by the amended application. "Variances and exceptions. ., should not be permitted except after such full and adequate notice as will enable parties having an interest to know what is projected aid, thus, to have an opportunity to protest. For a board to take jurisdiction, the notice of the hearing must specify that a variance is sought, giving details." E.C. Yokley, Zoning Law andPractice, § 18-6 at 149 (4th ed. 1979). Appellant appeared and was ready to oppose one application, but was forced to address another. The Zoning Board's decision to allow MRSJ to amend its petition to seek a special-use permit, coupled with a dimensional variance for parking, denied Appellant the opportunity to properly prepare and present her objections to the amended application. The Zoning Board's error in granting MRSJ's request to amend its petition without the required readvertisement was a "mistake" that went to "substance" rather than "form." Staller v. Cranston Zoning Board of Review, 100 R.I. 340, 341,215 A.2d 418. 419 (R.I. 1965). By granting MRSJ's request to orally amend its petition during the hearing, the Zoning Board acted in excess of its authority. Moreover, the Zoning Board's failure to follow the procedure set forth in section 9.7.4 of the ordinance regarding readvertisement of any amendment to a petition was in violation of the ordinance.
 Special-use Permits and Variances 
Appellant argues that the Zoning Board violated statutory and ordinance provisions by granting MRSJ's request for a special-use permit to allow a two-family dwelling on the property and for a dimensional variance for parking. Appellant further contends that contrary to the opinion offered by the Town Solicitor, the Zoning Board cannot grant a special-use permit and a dimensional variance simultaneously. See Newton v. Zoning Board ofWarwick, 713 A.2d 239 (R.I, 1998) and Northeastern Corp. v. Zoning Boardof Review of the Town of New Shoreham, 534 A.2d 603 (R.I. 1987).
MRSJ has consistently argued that it sought to amend its petition at the hearing to request a special-use permit rather than a use variance in reliance on the Town Solicitor's opinion that Newton was inapplicable to the instant matter. (Def.'s Mem. of Law at 9.) The Town Solicitor offered a lengthy interpretation of the law regarding the coupling of requests for a dimensional variance with other forms of relief. He distinguished the ordinance in Newton from the ordinance involved in the subject application and implied that MRSJ was not precluded from simultaneously seeking a special use permit and dimensional variance. MRSJ argues that "it had prepared for, and was ready to proceed on, its application for a Use Variance and a Dimensional Valance." (Def's Mem. of Law at 8.) However, "[a]s a direct consequence of hearing the Town's legal position, MRSJ requested that the Board allow it to amend its application from a Use Variance for a Two-Family Dwelling to a Special-Use Permit for the same." Id. at 4. MRSJ contends that "[d]ue to [the Town Solicitor's] working understanding with the West Warwick Zoning Ordinance as Town Solicitor, and in reliance of the Town's interpretation of the same, MRSJ requested to amend its application to that of a Special-Use Permit." Id. at 9. MRSJ adopts the Solicitor's interpretation of the law in arguing that the Zoning Board was well within its authority to grant the special-use permit and dimensional variance concurrently, its decision was appropriate and should be affirmed.
Section 5.3 of the applicable ordinance addresses various uses that are permitted, prohibited, and allowed only by special-use permit in the residential and non-residential districts. It lists over a dozen uses within a village commercial district which are permitted without board approval. These uses range from schools and. clinics to a variety of business options. The section also lists the uses that can be developed only after obtaining a special use permit from the Zoning Board. These uses range from a two-family dwelling, as requested by MRSJ, to hospitals or sanitariums.
In considering a request for a special-use permit, the Zoning Board had to determine that the special-use permit would conform to all "applicable sections" and "applicable standards" of the ordinance. See Sections 10.2.2.4 and 10.2.2.5. One such applicable section of the ordinance is section 5.9.10.7, which requires a two-family dwelling unit to have two (2) parking spaces per dwelling unit.[1] The ordinance specifies the location of required parking spaces in section 5.9.5, which states:
 "[o]ff-street parking spaces shall be on the same lot as the structure or use they are intended to serve or an abutting lot. Upon application to the zoning board of review, a variance pursuant to section 9 of this ordinance may be granted by the board to allow off-street parking on other off-site lots in the same district as the subject lot provided that the following conditions are met in addition to the requirements of section 9.
 5.9.5.1 Other allowable of-site parking is a location that is within 100 feet of the boundary of the lot of the principal use or structure; and reasonably and safely accessible, in the opinion of the zoning board, by pedestrians provided, however, that such off-site locations shall be compatible with the use, value [of] neighboring property, and that the approval of the off-site location will not be detrimental to the general health and welfare of the community and be consistent with the comprehensive plan."
Thus, in order for MRSJ to comply with section 5.9.10.7, MRSJ must provide two parking spaces per unit or a total of four parking spaces for the property. Moreover, subsection 5.9.5.1 explains that while off-site parking may be permitted, such parking must be within 100 feet of the boundary of the lot of the principal structure.
Due to the size of the lot, it is undisputed that MRSJ would have been unable to comply with the ordinance's provisions regarding on-site parking. (Tr. of June 27, 2001 heating at 27.) Thus MRSJ requested a dimensional variance for parking in conjunction with its request for a special-use permit to allow a two-family dwelling on the property. Although MRSJ obtained alternative parking accommodations off-site, the alternate parking spaces failed to meet the distance requirements set forth in subsection 5.9.5.1. Id. at 76.
Since MRSJ could not meet the on-site parking requirements contained in section 5.9.5, MRSJ also petitioned the Zoning Board for a dimensional variance for parking. Under section 9.8 of the ordinance, in granting a variance, the Zoning Board must make the following findings:
 "9.8.1 [t]hat the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 9.8.2 That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 9.8.3 That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 9.8.4 That the relief to be granted is the least relief necessary."
The ordinance further provides that in granting a dimensional variance the Zoning Board must also find that:
 "the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use maybe more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
The Rhode Island Supreme Court has held that that a dimensional variance cannot be granted where a use is permitted by way of special exception. See Northeastern Corp. v. Zoning Board of Review of the Townof New Shoreham. 534 A.2d 603 (RI 1987). In that case, the petitioner sought to build a number of boatel units on its property.[2] The Town of New Shoreham zoning ordinance permitted by grant of a special exception "an enterprise such as a hotel, motel or boatel [to] be situated in a business district provided that the lot upon which such enterprise is to be located contains a minimum of 40,000 square feet of land" Id. at 605. However, a survey revealed that the petitioner's parcel contained only 32,000 square feet of land. Id. The Court wrote
 "[i]t is obvious that the board was powerless to sanction the boatel project once it concluded that the square-footage requirement of 40,000 square feet could not be satisfied because the operation of the boatel is a "conditionally permitted use,' and if the condition, the square-foot requirement, was not satisfied, the board could not grant the use." Id.
Again, in Newton v. Zoning Board of the City of Warwick, 713 A.2d 239, 242 (R.I. i99S), the Rhode Island Supreme Court affirmed the "determination that a special-use permit could not be combined with a dimensional variance." Id. at 422. In Newton, the City of Warwick Zoning Ordinance authorized the Zoning Board to permit a multifamily dwelling to be built in an area zoned for office use by special-use permit Id. at 241. In order for the Zoning Board to grant a special-use permit, evidence had to be entered into the record to show that the "special-use meets all of the criteria set forth in the subsection of this ordinance authorizing such special-use." Id. (emphasis in original). Various provisions in the zoning ordinance established "minimum standards for lot size, side-and rear-lot requirements, density, parking, exit, entrance, and landscaping." Id. The zoning ordinance "specifically provides that a special-use permit to erect a multifamily dwelling in an area zoned for office use must meet these minimum standards." Id. at 242. The applicant's lot in Newton however, failed to meet any of these developmental standards, necessitating his request for dimensional reliefId. In holding that a dimensional variance and a special-use permit could not be granted concurrently, the Court considered the effect of G.L. 1956 § 45-24-31(61), which deals specifically with the issue of a dimensional variance. The Court explained that this provision "unequivocally command[s] that a dimensional variance be granted only in connection with the enjoyment of a legally permitted beneficial use, not in conjunction with a use granted by special permit"[3] Id. (emphasis in original).
Accordingly, this Court finds that the Zoning Board's decision to grant MRSJ's request for both the special-use permit and dimensional variance for parking was in violation of the statutory and ordinance provisions. The Rhode Island Supreme Court has held that a remand for further proceedings is necessary when a genuine defect in the proceedings in the first instance was not the fault of the parties seeking relief. See RogerWilliams College v. Gallison, 572 A.2d 61, 63 (R.L 1990) (citing Kraernerv. Zoning Board of Review of Warwick, 98 R.I. 328, 201 A.2d 643 (1964) and Center Real Co . v. Zoning Board of view of Warwick 96 R.I. 482,194 A.2d 671 (1.963)). In the instant case, MRSJ relied, to its detriment, on the Town Solicitor's erroneous interpretation of Newton and its inapplicability to MRSJ's petition. Accordingly, the Court remands the instant matter to the Zoning Board for consideration of MRSJ's petition as originally advertised, for a use variance to allow a two-family dwelling on the property and a dimensional variance. The Court is mindful of the standard that MRSJ must meet to obtain such relief; and nothing contained herein should be construed by the parties as an expression of an opinion by the Court as to whether or not MRSJ can meet that standard. Because MRSJ was encouraged to seek an amendment to its application and to proceed on the amended application by the opinion offered by the Town Solicitor, MRSJ should be given the opportunity to proceed on its previous application.
 Conclusion
After a review of the entire record, this Court finds that the Zoning Board's decision is in violation of both statutory and ordinance provisions. The Zoning Board erred when it permitted MRSJ to amend its application at the hearing. In addition, the Zoning Board erred when it granted MRSJ's request for both a special-use permit and dimensional variance for parking. Accordingly, the decision of the Zoning Board of the Town of West Warwick is reversed. Because MRSJ was prompted by the Town Solicitor to amend its application at the hearing, this matter is remanded to the Zoning Board for a new hearing to consider the petition of MRSJ, as originally advertised, for a use variance to allow a two-family dwelling and a dimensional variance for Parking.
Counsel shall submit the appropriate order for entry in accordance with this decision.
[1] Section 5.9.10.7 states "[o]ff-street parking space requirements. The number of off-street parking spaces for each use shall be required as follows:
 Minimum Requirement
 Parking Spaces Per Unit
 or Gross Floor Area
Use (GFA)
Residential:
Single-family 2/dwelling unit (DU)
Two-family 2/DU
Multiple-family 2/DU
Elderly housing 1/DU
Rooming House 1/room
Home occupation 1/100 square feet of home occupation
Accessory family dwelling Unit 1/DU
Mobile home 1/DU
Office:
 Banks and other financial institutions 1/200 square feet GFA
 Medical office and clinic 1/150 square feet
 Business and other education service 1/instructor plus 1/employee or staff peak
 shift plus 1/4 students

[2] "A boatel can be best described as a shore facility having docking accommodations." Id. at 606 n. 1.
[3] Id. The Court in Newton abserved that the City of Warwick's Zoning Ordinance was "unambiguous and imperative in requiring that a special-use meet all the criteria authorizing such special-use." Id. Accordingly, a different result could be reached in cases where the zoning ordinance at issue permits dimensional relief to be granted in conjunction with a special-use permit via a specific provision in the ordinance.