DECISION
The plaintiff, Federal Properties of R.I., Inc. ("Federal Properties"), appeals from a decision of the Zoning Board of Review of the Town of New Shoreham ("the board"). By its decision, the board denied Federal Properties' application for a special-use permit which would have allowed it to create two additional dwelling units in a building already lawfully devoted to both retail and residential purposes. Because the board prejudiced Federal Properties' substantial rights by misinterpreting statutory and ordinance provisions, the board's decision is reversed.
 Facts and Travel
In 1961, Federal Properties purchased a 22,500 square-foot parcel located at 1 Ocean Drive, New Shoreham, otherwise identified as Tax Assessor's Plat 5, Lot 11. Shortly thereafter, it built a single-story flat-roofed building on the parcel, which is located in a service-commercial zone. In New Shoreham, the service-commercial zone "comprises land connecting the two harbors . . . [to] be developed primarily to serve the utility and service needs of the Island," Town of New Shoreham Zoning Ordinance § 313(A).
In 1995, to accommodate the needs of its commercial tenants, Federal Properties applied, and received permission from the board, to vary the dimensional requirements of the Town of New Shoreham Zoning Ordinance ("the ordinance") in constructing additions to both sides of its building. However, because its building was situated in an Historic District, Federal Properties also needed a Certificate of Appropriateness from the New Shoreham Historic District Commission. And while Federal Properties succeeded in obtaining that certificate, it came with a condition-that Federal Properties replace its flat roof with a pitched roof more in conformity with the island's architectural styles. A collateral consequence of the new roof's pitch, however, was the creation of second-story floor space. And because a permitted use in the service-commercial zone is a "single family dwelling unit" for each 20,000 square feet, Federal Properties obtained an as-right building permit to construct a dwelling unit in the newly created second floor.
Thereafter, and at least ostensibly to accommodate the needs of its tenants, Federal Properties applied for a special-use permit pursuant to §§ 313(D) and 411 of the ordinance in order to construct two additional dwelling units on the second floor.[1] Section 313(D) indicates that permitted uses in the service-commercial zone include "Retail/Residential Mixed Use (Provided compliance with the Standards of Section 411 is demonstrated) (amended, effct. 6/9/97)." Moreover, the chart titled "Use Categories Allowed by Zoning District" indicates that "Retail Residential Mixed" is a "Permitted Use" in the service-commercial zone. Section 411, however, titled "Retail/Residential Mixed Use," appears in "Article 4-Criteria for Special Use Permits," and provides as follows:
 "A. Standards: Retail/Residential Mixed Use shall conform to the following:
 1. Public Sewer and Water: A Retail/Residential Mixed Use shall be required to be connected to the municipal public sewer system and shall, where feasible, be connected to the municipal public water system.
 2. Use of Street Level for Retail Purposes: In a Retail/Residential Mixed Use, the entire ground floor at street level shall be used for retail purposes other than parking and shall not be used for residential dwelling purposes.
 3. Building Eligible for Residential/Retail Mixed Use: Residential dwelling units shall be permitted in a Retail/Residential Mixed Use that conforms to the provisions of this section without regard to the Residential Density Requirements of the zoning district provided that such structure was in existence prior to March 4, 1989 and further provided that no such mixed use shall include more than four (4) dwelling units in which the Retail/Residential Mixed Use is located.
 4. Structural Modifications for Retail/Residential Mixed Use: Such structures may be modified to enable them to accommodate a Retail/ Residential Mixed use. The total square footage of any such structure may not be increased. This standard may be modified by the Zoning Board of Review to incorporate any fire escapes or handicap access that may be necessary to enable such structure to conform to the State Building Code if no other practical means of conformance is available.
 5. Minimum Dwelling Size: Dwelling units in a Retail/Residential Mixed Use shall be no less than five hundred (500) square feet in area.
 6. Parking and Landscaping: The provisions of Sections 502 and 503 shall be adhered to."
After a hearing, the board concluded that "[i]t is clear that the structure in question pre-dated March 4, 1989, and that it has been extensively modified in excess of the provisions of Section 411, A-4." Furthermore, the board rejected Federal Properties' explanation of how the second-story floor space came to be, stating:
 "The Board finds the applicant's argument, that the increase in floor area is a result of the Historic District Commission's requirements, to be specious. The applicant testified that his investment in the renovations was in excess of $250,000. Obviously, a large portion of that expense is a result of the second floor expansion. To say that the space exists only because of the HDC's insistence strains credulity. The building could have been renovated in accordance with the provisions of the 1995 Zoning decision, and in accordance with HDC guidelines, for a fraction of this cost."
Accordingly, the board denied Federal Properties' application. From that decision, Federal Properties duly appealed to the Superior Court, to the merits of which the Court now turns.
 Analysis
But first, the Court notes that it must limit its review of the board's decision to the record, G.L. 1956 § 45-24-69(c), and that it cannot substitute its judgment for that of the board as to the weight of the evidence on questions of fact, G.L. 1956 § 45-24-69(d). However, the Court can reverse the board's decision if it is in violation of constitutional or statutory provisions or is affected by other error of law. G.L. 1956 § 45-24-69(d)(1) (4). Finally, this Court is "required to resolve all doubts and ambiguities contained in the zoning laws in favor of the landowner because these regulations are in derogation of the property owner's common-law right to use her property as she wishes," Denomme v. Mowry, 557 A.2d 1229, 1231 (R.I. 1989); seealso Earle v. Zoning Board of Review, 96 R.I. 321, 324-25, 191 A.2d 161, 164 (1963) ("[z]oning ordinances are in derogation of the common-law right of the owner as to the use of his property and must therefore be strictly construed[;] [i]n determining restrictions upon an owner's use of his property in instances where doubt exists as to the legislative intention, the ordinance should be interpreted in favor of the property owner").
From this Court's review of the Town of New Shoreham Zoning Ordinance, it has become clear that the ordinance is laden with ambiguities, seegenerally Sea Fare's American Cafi, Inc. v. Brick Market PlaceAssociates, 787 A.2d 472, 476 (R.I. 2001) ("`[a] contract is ambiguous if . . . it is reasonably susceptible of different constructions'"); Blaisv. Franklin, 31 R.I. 95, 77 A. 172, 177 (1910) ("the language of the statute is ambiguous [if it] . . . is fairly susceptible of two or more interpretations"), which this Court, as previously mentioned, must resolve in favor of the landowner.
Most prominent for present purposes is the ambiguity as to the status of retail/residential mixed uses in New Shoreham. Though purportedly a permitted use-"[a] land use permitted as of right so long as spatial standards . . . are met," Town of New Shoreham Zoning Ordinance § 202(126)-pursuant to both § 313(D) and the "Use Categories Allowed by Zoning District" chart, the criteria to obtain a retail/residential mixed use are located in the article dealing with special-use permits and provide standards beyond those that are merely spatial. But even assuming that the use provided by § 411 is properly characterized as requiring a special-use permit, the § 411 criteria themselves are ambiguous because they do not clearly reflect which criteria are prerequisites to granting a § 411 special-use permit and which criteria are conditions attached to the grant of a § 411 special-use permit.
In parsing § 411, however, the Court will start with the unambiguous: property owners seeking a § 411 special-use permit are required, as a prerequisite to the granting of a § 411 special-use permit, to present "a structure [that] was in existence prior to March 4, 1989." Contrarily, though just as clearly, a property owner is not required to conform, as a prerequisite to the grant of a § 411 special-use permit, to the municipal tie-in provisions of subsection 1, to the street-level-retail provision of subsection 2, to the minimum-dwelling-size provision of subsection 5, to the minimum-dwelling-size provision of subsection 5, nor to the parking and landscaping provisions of subsection 6. However, and sliding now into the realm of the ambiguous, must a property owner conform to the no-increase-in-total-square-footage provision of subsection 4 as a prerequisite to being granted § 411 relief? Subsection 4 provides that
 "4. Structural Modifications for Retail/Residential Mixed Use: Such structures may be modified to enable them to accommodate a Retail/ Residential Mixed use. The total square footage of any such structure may not be increased. This standard may be modified by the Zoning Board of Review to incorporate any fire escapes or handicap access that may be necessary to enable such structure to conform to the State Building Code if no other practical means of conformance is available."
The second sentence of this subsection clearly contemplates post-§ 411 events since the board does not need to modify the standard unless the § 411 special-use permit is first granted. Furthermore, it is at least questionable whether the first sentence's allowance is directed toward pre-application conduct since it seems unlikely that a property owner would modify their structure to accommodate a use for which they as-yet lack permission. In any event, the third sentence's total-square-footage requirement is definitely problematic. First, there is ambiguity concerning the meaning of the phrase, "total square footage." Although "building footprint" and "floor area" are defined in the ordinance, the phrase, "total square footage" is not. And while the ordinance dictates that "[w]ords or terms, whether or not defined in this ordinance, which are substantially similar to words or terms defined herein, shall be construed according to the definitions provided," Town of New Shoreham Zoning Ordinance § 201(F), the question arises as to whether "total square footage" is more substantially similar to "building footprint," defined as "[t]he land or surface area directly occupied by a building . . . including all accessory structures," Town of New Shoreham Zoning Ordinance § 202(24), or to "floor area," defined as "[t]he sum of the areas of all floors of a building, as measured by the exterior limits thereof, but excluding basement areas when these are neither inhabited nor above ground."
But even putting aside this ambiguity, another ambiguity exists regarding whether the third sentence renders any pre-application modifications that result in an increase in the "total square footage"-even those which might be slight and do not cause the structure to lose its essence as having been in existence since March 4, 1989-violative of subsection 4. While property owners may certainly engage in an overly extensive pre-application modification that could lead the board to conclude that their once-qualifying structure has gone out of existence, that is not what happened here. To the contrary, the board found that "the structure in question pre-dated March 4, 1989." Because subsection 4 is ambiguous as to whether pre-application modifications-including those that do not alter the essential character of the structure from one that has existed since March 4, 1989-violate subsection 4, this Court is bound to strictly construe it in favor of the property owner and hold that subsection 4 is a condition of a § 411 special-use permit rather than a prerequisite to its grant.
As such, once the board determined, as it did, that "the structure in question pre-dated March 4, 1989," the granting of § 411 relief was mandated. Having concluded that the structure was in existence prior to March 4, 1989, the board should have granted the application and required Federal Properties, from that point in time forward, to conform to the conditions provided in § 411.
The Court notes two final caveats before concluding. The first is that this decision does not imply that it is open season for § 411 special-use permits in New Shoreham. On the contrary, property owners must satisfy the board that their structure was in existence prior to March 4, 1989, and if modifications were made since that date, that the structure nonetheless retains its essence as such. And, of course, the granting of a § 411 special-use permit is awarded only in conformance with the additional provisions provided. Second, by this decision, the Court does not substitute its judgment for board's factual determination that Federal Properties was "specious" in its assertion that "the increase in floor area is a result of the Historic District Commission's requirements." To the contrary, that determination is simply of no consequence to this decision.
 Conclusion
After reviewing the entire record, the Court finds that the board's decision denying Federal Properties' application violated statutory and ordinance provisions as well as Federal Properties' substantial rights. As such, the board's decision is reversed.
[1] Although the "Application for Special Use Permit, Variance or Appeal" reflects that Federal Properties also applied for a variance from §§ 313(B) and 704, it is clear from the board's decision that it denied the application based on its determination that Federal Properties failed to satisfy the requirements of § 411, the board stating that "the application was made under Section 411, the standards for which clearly are not met." Moreover, § 411 specifically states that if a building conforms to its provisions, then the residential density requirements provided by § 313(B) are inapplicable. Thus any concern possibly raised by the commingling of a request for a special-use permit with that for dimensionally-related relief is obviated. See generally Newton v. Zoning Board of Review, 713 A.2d 239, 242 (R.I. 1998) ("a dimensional variance [may] be granted only in connection with the enjoyment of a legally permitted beneficial use, not in conjunction with a use granted by special permit").