DECISION
This matter comes before the Court on an appeal from a decision of the Zoning Board of Review of the City of Warwick (the "Board") brought by Colbea Enterprises, L.L.C. ("Appellant"). Appellant seeks reversal of the Board's decision, which granted the application for zoning relief filed by Alliance Energy Corporation ("Alliance"). Jurisdiction of this Court is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
Alliance is the owner of the piece of real estate located in the City of Warwick on Post Road, also designated as Assessor's Plat 323, Lots 399 and 400 (the "Property"). Appellant is the owner of the piece of real estate that sits adjacent to the Property. The Property is located in the zoning district designated by the Warwick Zoning Ordinance (the "Ordinance") as the Warwick Station Intermodal District (the "Intermodal District"). See Warwick Zoning Ordinances § 301.11. Presently, the Property houses a gas station with a convenience store, which contains a Dunkin Donuts. Alliance has owned the Property for approximately ten years and the current service station was created pursuant to a special use permit issued by the Board in a decision dated October 21, 1998.[1] At that time, the Property was zoned General Business and in order to use the Property as a gas station with retail, a special use permit was required.[2] In the instant matter, Alliance proposes to demolish that current service station and convenience store and to erect, in its place, a new service station with convenience store, which would not be a permitted use. The current service station is 1,104 square feet with eight fueling stations. The proposed new station would be 3,622 square feet with twelve fueling stations, which would be housed under a new canopy. Alliance proposes to construct the new station on both the lot on which the current gas station is located and the abutting lot, which Alliance also owns.
On January 11, 2006, Alliance appeared before the Warwick Station Redevelopment Agency (the "Redevelopment Agency") on its petition for site demolition and reconstruction of the gas station, convenience store, and associated fast food facilities. Thereafter, on March 17, 2006, the Redevelopment Agency issued a formal decision granting Alliance's petition. In its decision, the Redevelopment Agency found that according to Table 1 Use Regulations ("Table 1"), Use Regulation 421, a gas station with retail is a prohibited use in the Intermodal District. See Warwick Zoning Ordinances § 300, Table 1, Use Regulation 421. However, the Redevelopment Agency explained that this prohibition is subject to footnote 16a, which states:
 "Airport related service uses located within the Intermodal zone and directly abutting Pot [sic] Road at the time of the effective date of this ordinance [Ordinance No. O-98-44] shall be allowed to expand within the limits of their property and abutting properties held in the same ownership at the time of the effective date of this ordinance [Ordinance No. O-98-44]. For the purposes of this ordinance airport related uses shall be defined in Table 1. Use regulations as #421 gasoline station and #419 vehicle rental agency, which may consist of such accessory uses as vehicle storage, fuel pumps, motor vehicle maintenance, vehicle washing, and sales of rental vehicles." Warwick Zoning Ordinances § 300, Table 1, footnote 16a.
The Redevelopment Agency found that Alliance's proposal met the criteria of footnote 16a ("Footnote 16a"), and therefore, expansion of the existing station was authorized.[3] The grant was subject to various conditions, including Alliance obtaining the required approvals from the Board.
On April 21, 2006, Alliance filed a petition with the Board to obtain the requisite zoning relief on the Property. As grounds for its request, Alliance cited to Table 1, Use Regulation 421 and specifically to Footnote 16a. In conjunction with the proposed new gas station, Alliance applied for four dimensional variances pursuant to § 906.3 of the Ordinance. Alliance sought the dimensional variances because the proposed service station would have fewer than the required parking spaces, loading spaces, and landscape buffer, as well as a larger than allowable driveway.[4]
A public hearing on Alliance's application was conducted before the Board on May 9, 2006. At the hearing, Alliance offered the testimony of four expert witnesses. Paul Bannon was presented and qualified as an expert in traffic circulation. He testified that no negative impacts were discovered with respect to the proposed new station and that a permit for the project had been approved by the Department of Transportation. Secondly, Robert DiGregorio testified as an expert in the field of real estate. He testified that it was his professional opinion that the new station would not alter the general character of the surrounding area nor would it negatively impact the intent or purpose of the Warwick Comprehensive Plan. Next, Matthew Smith testified as an expert in civil engineering. Mr. Smith bore witness to the preparation of the site plan for the proposed new station, which was prepared under his direct supervision. Finally, Alliance offered the testimony of Edward Pimentel, an expert in community planning and land use. Mr. Pimentel testified that the proposed new station was specifically authorized by the Ordinance and was consistent with the surrounding area. No one spoke in opposition to Alliance's proposal. The Warwick Planning Department also posed no objection to the relief requested, finding that such relief was specifically authorized by Footnote 16a. In offering their recommendation, the Planning Department further stipulated that the basic use of the Property remain consistent with the current use.
At the close of the hearing, a motion was made to approve Alliance's request for relief, and that motion was seconded. Alliance's petition was approved by the Board unanimously. On June 9, 2006, the Board issued a formal decision granting Alliance's request to demolish the existing building and to construct the new station. The Board also granted the requested dimensional variances. Thereafter, on June 28, 2006, Appellant timely filed this appeal. Appellant properly provided notice of the appeal to all required parties pursuant to § 45-24-69.1.
 Standard of Review
The Superior Court's review of the decision of a zoning board is pursuant to § 45- 24-69(d). Section 45-24-69(d) states:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions; (2) In excess of the authority granted to the zoning board of review by statute or ordinance; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 45-24-69(d).
It is axiomatic that "the Superior Court reviews the decisions of a plan commission or board of review under the `traditional judicial review' standard applicable to administrative agency actions."Restivo v. Lynch, 707 A.2d 663, 665 (R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level."Id. at 665-66 (quoting Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)). The trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979). With respect to questions of law, however, this Court's review is de novo. See von Bernuth v. Zoning Bd. of Review,770 A.2d 396, 399 (R.I. 2001); see also Kirby v. Planning Bd. ofReview, 634 A.2d 285, 290 (R.I. 1993).
In support of their appeal, Appellant alleges that the Board committed an error of law in granting the dimensional variances in conjunction with a use permitted by special use permit. Appellant further argues that pursuant to the requirements of the Ordinance; Alliance should have been required to obtain a second special use permit in order to construct the proposed gas station. Alliance, however, maintains that the Board is without authority to require the issuance of a second special use permit. Alliance, in support of this contention, argues that the Ordinance allows the gas station to expand as of right, so long as the expansion does not result in an intensification of use that is contrary to public interest. In addition, Alliance argues that the Appellant should be precluded from taking this appeal because it did not appear to voice its objections at the public hearing before the Board.
 Standing
As a preliminary matter, this Court rejects Alliance's challenge to Appellant's standing to bring the instant appeal. Pursuant to § 45-24-69
an "aggrieved party" is entitled to appeal a decision of a zoning board to the Superior Court. See § 45-24-69. An "aggrieved party" is defined as "(i) Any person or persons or entity or entities who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of a city or town; or (ii) Anyone requiring notice pursuant to this chapter." Sec.45-24-31. As an abutting land owner, Appellant was entitled to receive notice of Alliance's application for zoning relief. See § 45-24-41(b);see also § 45-24-53. Therefore, as a proper recipient of notice, Appellant has standing to bring this appeal. There is no requirement, either under the General Laws or the Ordinance that an aggrieved party must first appear at the zoning board hearing and voice their objections. As such, this matter is properly before the Court.
 Requirement of a Special Use Permit
Appellant contends that the Board should have required Alliance to obtain a special use permit in order to reconstruct the gas station. Appellant does agree with the Board's finding that the Property is eligible for treatment under Footnote 16a. However, Appellant reads the language of Footnote 16a to require the issuance of a special use permit in order for any expansion to take place. Specifically, Appellant argues that the use of the word "allowed" within the phrase "shall be allowed to expand" evidences the City Council's intent to require a special use permit. Warwick Zoning Ordinances § 300, Table 1, footnote 16(a). On the other hand, in its reading of Footnote 16a, Alliance focuses on the inclusion of the term "shall" and argues that its enclosure evidences the City Council's intent to create a mandatory exception. Seeid. Alliance construes Footnote 16a as carving out a narrow exception, which allows existing gas stations and vehicle rental agencies located in the Intermodal District to expand as of right. As such, Alliance contends that it was not required to apply for a special use permit. This Court agrees.
This Court is bound to read the provisions of the Ordinance in accordance with Rhode Island's well established rules of statutory construction. "It is well settled that the rules governing statutory interpretation are equally applicable to the interpretation of an ordinance." Jones v. Rommell, 521 A.2d 543, 544-545 (R.I. 1987);see also Mongony v. Bevilacqua, 432 A.2d 661 (R.I. 1981). Our Supreme Court has held that "`when the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning.'" Park v. RizzoFord, Inc., 893 A.2d 216, 221 (R.I. 2006) (quoting Gem Plumbing Heating Co. v. Rossi, 867 A.2d 796, 811 (R.I. 2005)). "When a statute is ambiguous, however, we must apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." Harvard Pilgrim Health Care of New Eng.,Inc. v. Rossi, 847 A.2d 286, 290 (R.I. 2004). Further, "it is axiomatic that `this Court will not broaden statutory provisions by judicial interpretation unless such interpretation is necessary and appropriate in carrying out the clear intent or defining the terms of the statute.'"State v. Santos, 870 A.2d 1029, 1032 (R.I. 2005) (quoting Simeone v.Charron, 762 A.2d 442, 448-49 (R.I. 2000)). This Court is guided by these principles in its approach to the provisions of the Ordinance.
As stated previously, the Warwick Station Redevelopment Agency, the Warwick Planning Department, and the Zoning Board all interpreted Footnote 16a to specifically authorize Alliance to expand its preexisting gas station. Moreover, the three agencies did not read Footnote 16a to require the issuance of a special use permit as a prerequisite to expansion. While this Court's review of a question of law is de novo, it is important to note that "[t]he law in Rhode Island is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." In re Lallo, 768 A.2d 921, 926 (R.I. 2001). Furthermore, "`where the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized.'" Id. (quoting Gallison v. Bristol Sch. Comm.,493 A.2d 164, 166 (R.I. 1985)).
This Court finds that the construction of Footnote 16a, utilized by the above agencies, is not clearly erroneous or unauthorized. There is no language in Footnote 16a that makes any reference to the condition of obtaining a special use permit in order to expand. Consequently, this Court would be impermissibly broadening a statutory provision to hold otherwise. This Court finds that Footnote 16a affords a narrow exception to existing uses in the Intermodal District, which fall under either use regulation 419 (vehicle rental agency) or use regulation 421 (gas station with retail/convenience). As a result, expansion of these uses is permitted as of right, so long as such expansion is in complete conformance with the requirements of the Ordinance.[5] It is further significant to note that according to Table 1, a vehicle rental agency is a permitted use in the Intermodal District while a gas station with retail/convenience is classified as a prohibited use. See Warwick Zoning Ordinances § 300, Table 1, Use Regulation 419, 421. In light of the applicability of Footnote 16a to both a permitted and prohibited use, this Court is of the opinion that the footnote was intended to alleviate any scrutiny as to the permissibility of the use and was meant to provide a blanket exception to existing vehicle rental agencies and gas stations. Therefore, the Board did not act in excess of its authority in permitting the expansion and redevelopment of the existing operation without the issuance of a special use permit.
 Dimensional Variances
Appellant further argues that the Board committed an error of law when it awarded Alliance dimensional variance relief on the Property. In support of its argument, Appellant cites to the language of § 906.3 of the Ordinance and to our Supreme Court's holding in Newton v. Zoning Bd.of Review. See Newton v. Zoning Bd. of Review, 713 A.2d 239 (R.I. 1998). Appellant argues that in accordance with the language of § 906.3, a dimensional variance can only be granted in conjunction with "legally permitted beneficial use of one's property." Warwick Zoning Ordinances § 906.3(B)(2). Additionally, Appellant cites to Newton to support its argument that a dimensional variance cannot be granted in conjunction with a special use permit. Alliance, however, argues that based on its reading of Footnote 16a, a special use permit is not required for the expansion of the existing gas station, and therefore, Newton is inapplicable.
In Newton, our Supreme Court was called upon to consider an application for dimensional variance relief which was filed pursuant to § 906.3 of the Warwick Zoning Ordinance. The applicants inNewton had applied for a dimensional variance in conjunction with a special use permit. In affirming the judgment of the Superior Court, our Supreme Court held that a dimensional variance can only be granted in conjunction with a legally permitted use and therefore not in conjunction with a use granted by special use permit. Id. at 242. In reaching their holding, our Supreme Court found it instructive to consider that the statutory definition of a dimensional variance requires an applicant to show "that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations." Sec. 45-24-31(61)(ii) (emphasis added).
As recognized above, this Court agrees that Alliance was not required to seek a special use permit to reconstruct the gas station. However, in arguing that Newton is inapplicable, Alliance overlooks the fact that the existing use of the Property was authorized by way of a special use permit granted by decision of the Board on October 21, 1998. As such, Alliance's use of the Property as a gas station with convenience store is a specially permitted use and therefore not a legally permitted use. The proposed new gas station, pursuant to Footnote16a, is an expansion of this existing use and thus is still a specially permitted use and not a legally permissible use. As a result, Newton is applicable, and the Board committed an error of law by granting the dimensional variances in conjunction with a specially permitted use.
Subsequent to the Newton decision, the General Laws were amended to provide that a zoning ordinance "additionally may provide that an applicant may apply for, and be issued, a dimensional variance in conjunction with a special use." Sec. 45-24-42(c). Additionally, §45-24-41 provides that "[t]he zoning board of review has the power to grant dimensional variances where the use is permitted by special use permit if provided for in the special use permit sections of the zoning ordinance." Sec. 45-24-41(d). Based on these plain directives, it is clear to this Court that the General Assembly intended that a dimensional variance and a use permitted by special use permit can only coexist if the city or town's ordinance so provides. "When construing a statute `our ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" Oliveira v. Lombardi, 794 A.2d 453,457 (R.I. 2002) (quoting Webster v. Perotta, 774 A. 2d 68, 75 (R.I. 2001)). While the General Assembly has opened the door for cities and towns to permit dimensional variances in conjunction with specially permitted uses, the City of Warwick has chosen not to amend its zoning ordinance. Therefore, absent affirmative action by the Warwick City Council, the prohibition of Newton is applicable in the instant matter. Thus, the Board acted in excess of statutory authority in approving Alliance's application for dimensional variance relief.
 Conclusion
Upon review of the entire record, this Court finds that the Zoning Board of Review of the City of Warwick improperly granted Alliance's application for dimensional variances. Although, as a result of the terms of Footnote 16a, Alliance is permitted to expand the existing service station as of right, any such expansion is required to comply with the requirements of the Warwick Zoning Ordinance. The Warwick Zoning Ordinance does not provide that dimensional relief can be granted in conjunction with a specially permitted use. As such, the Board acted in excess of its authority and in violation of G.L. 1956 § 45-24-42(c), § 45-24-41(d) and the Warwick Zoning Ordinance. Further, the decision of the Board was affected by error of law in that it contravenes our Supreme Court's holding in Newton.
Additionally, this Court would like to take the opportunity to make a general comment on the Warwick Zoning Ordinance as it is currently drafted, in particular Footnote 16a. While this Court endeavored to give a plain and reasonable meaning to the Ordinance, the insertion of this type of substantive footnote to a table governing use regulations does not advance a clarity and understanding of the City Council's legislative intent. This is especially true in light of the state of our law with regard to permitted uses, prohibited uses, specially permitted uses and the like; and the effect of such designation on the allowance of dimensional variances. If the City Council intended to alter the constraints on grants of dimensional variance relief, then it must do so in a way that is more evident and comprehensible. This Court would suggest to the City Council that in the event that it disagrees with this Court's construction of the Ordinance, it take an opportunity to revisit the language of Footnote 16a and address any inconsistencies and ambiguities that such wording may create.
After review of the entire record, the decision of the Board is reversed. Counsel shall submit an appropriate order for entry in accordance with this opinion.
[1] In the 1998 decision, the Board also granted Alliance a dimensional variance for less than the required side street setback. While this Court is not called upon to rule on the propriety of the 1998 decision, it is important to note that the Board's grant of a dimensional variance in conjunction with a special use permit was in excess of its jurisdiction under Rhode Island law. See Newton v. ZoningBd. of Review, 713 A.2d 239 (R.I. 1998) (decided four months prior to the Board's decision); see also Northeastern Corp. v. Zoning Bd. ofReview, 534 A.2d 603 (R.I. 1987). The import of these cases on the matter at hand will be discussed more fully infra.
[2] Specifically, the 1998 decision granted Alliance permission to construct a car wash to be used in conjunction with the existing gas station, which it had purchased approximately two years prior.
[3] The proposed Dunkin Donuts, which like the existing one, will not contain a drive-through, is permitted as of right in the Intermodal District. See Warwick Zoning Ordinances § 300, Table 1, Use Regulation 503.
[4] Alliance sought dimensional relief from the requirements of sections 505.1(A), 701.4, 701.7, and 702.2(A) of the Ordinance.
[5] See Warwick Zoning Ordinances § 401.7. "A nonconforming. . . . parcel of land or the use thereof, which exists by virtue of a variance or a special use permit (or a special exception) granted by the board, shall not be considered a nonconformance for the purposes of this section, and shall not acquire the rights of this section. Rather, such. . . . land, or use thereof, shall be considered a use by variance or a use by special use permit and any moving, addition, enlargement, expansion, intensification or change of such . . . parcel of land or use thereof, to any use other than a permitted use or other than in complete conformance with this ordinance, shall require a further variance or special use permit from the board."